Robert H. E. **FRANK**, Jerry D. **Mooberry**, Tyrone G. **Moreno**, Plaintiffs–Appellants,

v.

**U.S. WEST, INC.**, Defendant–Appellee.

No. 92–1120.

United States Court of Appeals,
Tenth Circuit.

Aug. 24, 1993.

---

Barry D. Roseman, Denver, CO (Walter L. Gerash of Gerash, Robinson & Miranda, with him on the brief), for plaintiffs-appellants.

Rodney L. Smith of Eiberger, Stacy, Smith & Martin, Denver, CO, for defendant-appellee.

Before BALDOCK, WOOD * and EBEL, Circuit Judges.

BALDOCK, Circuit Judge.

Plaintiffs appeal the district court's grant of summary judgment for Defendant on their age discrimination, national origin discrimination and state law claims, claiming the district court erred in finding that Defendant was not Plaintiffs' employer as a matter of law. Plaintiffs further allege that the district court abused its discretion by denying Plaintiffs and Defendant's Stipulated Motion to Drop and Add Parties and by denying Plaintiffs' Motion for Leave to Supplement Amended Complaint. We have jurisdiction under 28 U.S.C. § 1291.

## I. *Facts*

Defendant U.S. West, Inc., a Colorado corporation, is the sole shareholder in numerous subsidiaries, including Northwestern Bell Telephone Company ("Northwestern Bell"), Mountain States Telephone and Telegraph Company ("Mountain Bell"), and Pacific Northwest Bell ("PNB"). These three U.S. West, Inc. subsidiaries, known as operating companies, provide regional telecommunication services throughout the western United States. At the time Plaintiffs' claims arose and at the time their case was pending in the district court, the operating companies provided services under the trade name "U.S. West Communications" and sometimes acted as an integrated single entity.[1]

Defendant and Northwestern Bell have no common officers or directors. Northwestern Bell has over 14,000 employees and is adequately capitalized, having assets in excess of five billion dollars. Northwestern Bell, separately from Defendant, produces its own revenues, funds its own operating expenses, and maintains its own customers. Although Defendant has established certain broad, written personnel policies for all twenty-two of its subsidiaries, each subsidiary is responsible for implementing and administering the policies, and Defendant does not participate in the routine personnel decisions such as hiring, transferring, promoting, discharging and disciplining Northwestern Bell employees.

Plaintiff Jerry D. Mooberry, who is over age forty, served as Director of New Products Stimulation for Northwestern Bell. He supervised Plaintiffs Robert H.E. Frank, who is also over age forty, and Tyrone G. Moreno, who is Native American, both of whom are also Northwestern Bell employees. All three were involved in a project to develop telecommunication products and services, which were known as Digital Network Architecture/Digital Integrated Services ("DNA/DIS"), to facilitate transmission of computerized information over telephone lines. On this project, Plaintiff Mooberry's immediate supervisor was John Hale of PNB, whose immediate supervisor was from Mountain Bell, and the chain of command continued through a Northwestern Bell employee, another Mountain Bell employee, and finally to Thomas Madison and Richard D. McCormick, vice-president and president of Defendant U.S. West, Inc. While working on the DNA/DIS project, Plaintiffs encountered problems with employees of the other subsidiaries. These employees, who had previously developed a telecommunications system to which DNA/DIS would be a competitor, allegedly attempted to undermine Plaintiffs and their product development efforts with

---

* The Honorable Harlington Wood Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

1. Apparently, subsequent to this case, the three operating companies merged to form a single corporation, U.S. West Communications, Inc. However, at the time Plaintiffs' alleged claims arose and at the time this case was before the district court, the three operating companies were separate entities owned by parent company, U.S. West, Inc., and merely used the trade name U.S. West Communications in some of their business transactions.

defamatory comments against Plaintiffs personally and with comments and actions designed to interfere with Plaintiffs' career opportunities.

In September 1988, Plaintiff Frank informed Richard D. McCormick, president of Defendant U.S. West, Inc., of the conflict by letter. Acting on Mr. McCormick's behalf, Mr. James H. Stever responded to Plaintiff Frank's concerns by letter. Mr. Stever acknowledged that there was a problem but encouraged Plaintiff Frank to communicate with "others within [his] direct organization who may be closer to the problem." Later, Mr. McCormick met with Plaintiffs to discuss their complaints.

On August 8, 1989, Plaintiffs filed their initial complaint, and on October 1, 1989, they filed an Amended Complaint, each time naming Defendant U.S. West, Inc. as the only defendant. In their complaints, Plaintiffs alleged that they were denied bonuses, promotions and other career opportunities, and were subjected to defamatory comments in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e–17, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and various state laws. At the time the complaint was filed, Plaintiffs Frank and Moreno were citizens of Nebraska, and Plaintiff Mooberry was a citizen of Iowa.

On January 23, 1990, the parties submitted a stipulated motion to the district court to add Northwestern Bell, an Iowa corporation, as a defendant. This motion also attempted to stipulate that the court had diversity jurisdiction over the state law claims. On January 30, 1990, the district court denied the motion because complete diversity did not exist—*i.e.*, proposed defendant Northwestern Bell and Plaintiff Mooberry were both Iowa citizens—and jurisdiction could not be conferred by consent of the parties. On July 20, 1990, Defendant filed a motion for summary judgment, asserting that it was not a proper defendant in Plaintiffs' employment discrimination suit because it was not Plaintiffs' employer. Plaintiffs moved to supplement their amended complaint on September 21, 1990, again proposing to add Northwestern Bell as a defendant and also asserting that Defen-

dant·retaliated against Plaintiffs for filing the Title VII and ADEA actions. The district court denied this motion on March 26, 1992, because it was filed four and a half months after the court's May 4, 1990 deadline for amending the pleadings. Also on March 26, 1992, the district court granted Defendant's motion for summary judgment, finding that Defendant was not Plaintiffs' employer for purposes of the Title VII and ADEA suits and that Defendant was not liable for the acts of its subsidiary, Northwestern Bell, for the state claims.

## II. *Summary Judgment*

■ Applying the same standard as the district court, we review the court's grant of summary judgment de novo. *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1089 (10th Cir.1991). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is. entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Factual disputes about immaterial matters are irrelevant to a summary judgment determination. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We view the evidence in a light most favorable to the nonmovant. *Id.* at 255, 106 S.Ct. at 2513–14. However, it is not enough that the nonmovant's evidence be "merely colorable" or anything short of "significantly probative;" *id.* at 249–50, 106 S.Ct. at 2511, the nonmovant must come forward with specific facts showing a genuine issue for trial, *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986).

## A. *Federal Employment Discrimination Claims*

To establish a prima facie case for their Title VII and ADEA claims, Plaintiffs were required to prove, inter alia, that Defendant was their employer. 42 U.S.C. § 2000e–2; 28 U.S.C. § 623. Whether Defendant was Plaintiffs' employer depends upon whether Defendant is liable for the acts of its subsidiary, Northwestern Bell.

■ The law allows businesses to incorporate to limit liability and isolate liabilities among separate entities. *See Cascade Energy & Metals Corp. v. Banks,* 896 F.2d 1557, 1576 (10th Cir.), *cert. denied,* 498 U.S. 849, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990). One way liability is limited in corporations is that shareholders generally are not liable for the acts of the corporation. *NLRB v. Deena Artware, Inc.,* 361 U.S. 398, 402–03, 80 S.Ct. 441, 443–44, 4 L.Ed.2d 400 (1960). The doctrine of limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances. *Johnson v. Flowers Indus., Inc.,* 814 F.2d 978, 980–81 (4th Cir.1987).

■ Depending on the facts of the case before them, the courts have applied four different tests to determine whether a parent corporation is liable for the acts of its subsidiary.[2] While we decline to adopt any one of these tests as the exclusive test for use in·all employment discrimination cases, we today apply the integrated enterprise test because Plaintiffs and Defendant concede that this test best applies to the facts of this case. Under the integrated enterprise test, the following four factors are considered: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1089 (10th Cir.1991). We apply these factors and conclude that, as a matter of law, Defendant is not liable as an employer for the acts of Northwestern Bell because Plaintiffs have failed to present evidence that the two companies were integrated.

### 1. Interrelation of Operations

■ Plaintiffs presented no evidence that Northwestern Bell's operations were interrelated with those of Defendant, but instead asserted that interrelated operations could be inferred from the interrelation of operations between Northwestern Bell, Mountain Bell and PNB. The interrelated nature of the three subsidiaries is, however, irrelevant to the interrelation of operations inquiry. *See McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 933–34 (11th Cir.1987) (considering only interrelation of parent and subsidiary operations); *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389, 392 (8th Cir.1977) (same); *Perry v. Manocherian,* 675 F.Supp. 1417 (S.D.N.Y.1987) (same); *EEOC v. Financial Assurance, Inc.,* 624 F.Supp. 686 (W.D.Mo.1985) (same); *Smith v. Jones Warehouse, Inc.,* 590 F.Supp. 1206 (N.D.Ill. 1984) (same).

■ Plaintiffs also assert that because the chain of command over Plaintiffs on their DNA/DIS project crossed subsidiary lines and led ultimately to Defendant's president, Richard D. McCormick, Defendant's operations were interrelated with Northwestern Bell's operations. However, merely because the project supervisors ultimately reported to officers in the parent company is not enough to present a material factual dispute, because this exercise of control is not to a degree that exceeds the control normally exercised by a parent corporation. *See Johnson,* 814 F.2d at 981; *Armbruster v. Quinn,* 711 F.2d 1332, 1338 (6th Cir.1983). To hold otherwise would mean that there would always be a material factual dispute as to this prong because the top officer of a subsidiary is, at some point, always held accountable to an officer of the parent corporation. Furthermore, merely because a parent corporation eventually benefits from the work of its subsidiaries is not evidence of interrelated operations nor is the fact that one of parent's employees is an occasional consultant on the

---

**2.** The three tests, other than the test we apply today, include: (1) the agency theory under which the plaintiff must establish that the parent exercised a significant degree of control over the subsidiary's decision-making, *see e.g., Nation v. Winn–Dixie Stores,* 567 F.Supp. 997, 1010 (N.D.Ga.1983); (2) the alter ego test which is founded in equity and permits the court to pierce the corporate veil "when the court must prevent fraud, illegality or injustice, or when recognition

of the corporate entity would defeat public policy or shield someone from liability from a crime," *see Zubik v. Zubik,* 384 F.2d 267, 272 (3d Cir. 1967), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968); and (3) the instrumentality test under which the plaintiff must establish that the parent exercises extensive control over the acts of the subsidiary giving rise to the claim of wrongdoing, *see Fanfan v. Berwind Corp.,* 362 F.Supp. 793, 795 (E.D.Pa.1973).

project. Thus, Plaintiffs have failed to produce the type of evidence routinely used to show interrelated operations. *See McKenzie,* 834 F.2d at 933–34 (parent's operations were interrelated with those of subsidiary when parent kept subsidiary's books, issued its paychecks, and paid its bills); *Perry,* 675 F.Supp. at 1426 (operations interrelated when parent and subsidiary had common employees, the same headquarters, common advertising, and the parent rented its properties to the subsidiary); *Financial Assurance,* 624 F.Supp. at 689–90 (operations interrelated when parent and subsidiary shared services, equipment, employees and office space, and parent controlled subsidiary's payroll and benefit programs).

### 2. Centralized Control of Labor Relations

▆▆▆ Whether the parent controls labor relations is "an important factor" in the four-part integrated enterprise test. *Evans,* 936 F.2d at 1090. *Cf. Trevino v. Celanese Corp.,* 701 F.2d 397, 404 (5th Cir.1983) (control of labor relations is most important factor). The critical question is, "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Trevino,* 701 F.2d at 404. A parent's broad general policy statements regarding employment matters are not enough to satisfy this prong. *See Wood v. Southern Bell Tel. & Tel. Co.,* 725 F.Supp. 1244, 1249 (N.D.Ga.1989). To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary. *See Armbruster,* 711 F.2d at 1338–39 (common officer in parent and subsidiary approved all of subsidiary's hiring decisions); *Baker,* 560 F.2d at 392 (parent issued regimented rules regarding employment practices which subsidiaries were required to follow); *Smith,* 590 F.Supp. at 1208 (parent issued personnel policies, paid subsidiary's non-union employees, was listed as employer on the W–2 forms of subsidiary's non-union employees, and terminated a subsidiary employee on one occasion).

▆▆▆ Because Plaintiffs' proffered evidence included only broad policies established by Defendant, they failed to create a material factual dispute with regard to the control prong. Of the policies offered as evidence by Plaintiffs, only Defendant's equal opportunity policies, its identity statement—which set out general guidelines for fair treatment of subsidiary employees—and its Force Imbalance Guidelines could possibly impact Northwestern Bell's employment practices.[3] The first two are broad, general policies that in no way evidence an attempt by Defendant to exercise day-to-day control over employment decisions. The Force Imbalance Guidelines, which were issued by Defendant in its capacity as ERISA[4] Plan Administrator, establish the employee's transition allowance and other severance benefits after an employee has been terminated by one company owned by Defendant and is unable to find a job within that same company or another company owned by Defendant. Because it is not beyond the normal parent-subsidiary relationship for the parent to serve as ERISA Plan Administrator for the subsidiary, we do not think that this policy evidences excessive control by Defendant over Northwestern Bell's employment practices.[5] *See Bogue v. Ampex Corp.,* 976 F.2d 1319, 1323–24 (9th Cir.1992) (permissible under ERISA for parent corporation to control subsidiary's plan even though separate corporate structure exists), *cert. denied,* —— U.S. ——, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993); *Reichelt v. Emhart Corp.,* 921 F.2d 425, 427–28 (2d Cir.1990) (parent corporation providing benefits for subsidiary's employees under ERISA), *cert. denied,* —— U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991).

---

**3.** Plaintiffs also asserted that centralized control of labor relations was evidenced by Defendant's guidelines for advertising. We agree with the district court that advertising guidelines have no impact on labor relations.

**4.** Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461.

**5.** A parent corporation can be an "employer" under ERISA without fulfilling the Title VII and ADEA requirements of employer, because the ERISA statute defines employer much more broadly. *See* 29 U.S.C. § 1002(5) (ERISA statute defining employer as "any person acting directly as an employer, *or indirectly in the interest of an employer,* in relation to an employee benefit plan") (emphasis added).

### 3. Common Management

Defendant and Northwestern Bell have no common officers and have only one common manager, an officer of Defendant who manages the marketing operations for all three subsidiaries—Northwestern Bell, Mountain Bell and PNB. One common manager is insufficient to establish a disputed material fact under this prong of the integrated enterprise test. *See McKenzie,* 834 F.2d at 933–34 (common management found where there was common president, who controlled personnel management of both companies, as well as other common officers); *Baker,* 560 F.2d at 392 (common management found where parent and subsidiary had same officers and directors, same president); *Financial Assurance,* 624 F.Supp. at 689 (common management found where there was same family, consulting often on business matters, heading both parent and subsidiary); *Smith,* 590 F.Supp. at 1208 (common management found where parent and subsidiary had identical list of officers and directors).[6]

### 4. Common Ownership

It is undisputed that Defendant is the sole shareholder of Northwestern Bell. However, this factor, standing alone, can never be sufficient to establish parent liability. *See Wood,* 725 F.Supp. at 1249 ("mere existence of a parent-subsidiary relationship is not enough to impose liability on the parent").

Considering all four factors together, *see Financial Assurance,* 624 F.Supp. at 689, Plaintiffs have failed to establish a genuine issue of material fact to dispute the presumption that Defendant was not Plaintiffs' employer. *See Johnson,* 814 F.2d at 980–81 (strong presumption that parent company is not employer of its subsidiary's employees). Thus, the district court's grant of summary judgment on the Title VII and ADEA claims is affirmed.

### B. State Law Claims

Under Colorado law, a somewhat different standard is applied to determine whether a parent corporation is liable for the acts of its subsidiary. The inquiry is whether there is "such a close relationship between the two companies that one is, in essence, an instrumentality of the other." *New Sheridan Hotel & Bar, Ltd. v. Commercial Leasing,* 645 P.2d 868, 869 (Colo.Ct.App.1982). This inquiry involves ten factors, many of which examine whether the corporations respect the corporate form and operate as separate entities. *Id.* (citing *Fish v. East,* 114 F.2d 177 (10th Cir.1940)).[7] Because there is no evidence that Northwestern Bell was undercapitalized, that the corporations commingled assets, or that they ignored corporate formalities, the district court correctly determined that Northwestern Bell was not an instrumentality of Defendant. Thus, the district court's grant of summary judgment on the state claims is also affirmed.

6. Plaintiffs also assert that Defendant U.S. West, Inc.'s President, Richard McCormick, exercised managerial control with regard to Plaintiffs' problems on the DNA/DIS project. It is undisputed that Plaintiff Frank sent an unsolicited letter to President McCormick complaining of actions taken toward Plaintiffs, which McCormick delegated to James Stever, who is not a U.S. West, Inc. employee and who informed Plaintiff Frank that he should "communicate [his] concerns to others within [his] direct organization who may be closer to the problem." We agree with the district court that these facts present no evidence of managerial control by the parent's president over Plaintiffs.

7. These ten factors as set out in *Fish,* 114 F.2d at 191, include: (1) parent corporation owns all or majority of subsidiary's capital stock; (2) parent and subsidiary have common directors or officers; (3) parent corporation finances subsidiary; (4) parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; (5) subsidiary has grossly inadequate capital; (6) parent corporation pays subsidiary's salaries, expenses or losses; (7) subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) in parent corporation's papers, subsidiary is referred to as such or as a department or division; (9) directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; (10) formal legal requirements of subsidiary as separate and independent corporation are not observed.

III. *Motion to Drop and Add Parties*

Plaintiffs assert that the district court erred in denying the parties' stipulated motion to add Northwestern Bell, an Iowa corporation, as a defendant and drop Defendant U.S. West, Inc. The district court apparently denied the motion because the parties had stipulated in the motion that the court had diversity jurisdiction over the state law claims. As the court correctly observed, complete diversity did not exist because Plaintiff Mooberry was also an Iowa citizen, and jurisdiction cannot be conferred by consent of the parties. *Penteco Corp. Ltd. Partnership v. Union Gas System, Inc.*, 929 F.2d 1519, 1521 (10th Cir.1991). Plaintiffs now assert for the first time before this court that the district court should have approved the stipulated motion "with the exception of that one offending sentence." (Appellant's Brief at 29). We review for an abuse of discretion. *GWN Petroleum Corp. v. Ok–Tex Oil & Gas, Inc.*, 998 F.2d 853, 857–58 (10th Cir.1993).

▬ A motion to add a party is governed by Fed.R.Civ.P. 15(a), which sets out the methods available for amending pleadings. Under Rule 15(a), a party may amend its pleadings once as a matter of course at any time before a responsive pleading is served. Because Plaintiffs had already amended their complaint once, they could only amend by leave of court or by written consent of the adverse party. Fed.R.Civ.P. 15(a). Although Plaintiffs had Defendant's written consent to amend as evidenced by the stipulated motion, the motion contained an improper stipulation to diversity jurisdiction. When questioned about the diversity stipulation at oral argument, Plaintiffs' counsel admitted that their strategy before the district court was to keep diversity jurisdiction over the state claims to ensure that these claims would not be dismissed.[8] Thus, because the motion contained an improper diversity stipulation and because Plaintiffs neither sought reconsideration of the district court's decision nor submitted a revised motion removing the diversity stipulation, the

district court's rejection of the motion was not an abuse of discretion.

IV. *Motion to Supplement the Amended Complaint*

Plaintiffs also assert that the district court abused its discretion in denying Plaintiffs' September 21, 1990 motion to supplement their amended complaint. Plaintiffs motion to supplement again proposed to add Northwestern Bell as a defendant and also asserted retaliation claims arising subsequent to the complaint. The district court denied this motion because it was filed four and a half months after the court's May 4, 1990 deadline for amending the pleadings. We review for an abuse of discretion. *GWN Petroleum Corp. v. Ok–Tex Oil & Gas, Inc.*, 998 F.2d 853, 857–58 (10th Cir.1993).

▬ To the extent that Plaintiffs' motion to supplement sought the addition of a party, it is controlled by Rule 15(a) because it is actually a motion to amend. Fed.R.Civ.P. 15(d) (supplemental pleadings are those which set forth "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented"). Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir.1993) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, *see Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1462 (10th Cir.1991); *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir.1990); *First City Bank v. Air Capitol Aircraft Sales*, 820 F.2d 1127, 1133 (10th Cir.1987), especially when the party filing the motion has no adequate explanation

---

8. Although the district court could have added Northwestern Bell as a defendant and asserted pendent jurisdiction over the state claims because it had federal question jurisdiction over the

Title VII and ADEA claims, the court was not required to do so in light of the motion's diversity jurisdiction stipulation.

for the delay, *Woolsey*, 934 F.2d at 1462. Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Las Vegas Ice*, 893 F.2d at 1185.

■ Because Plaintiffs' motion was untimely in that it was filed four months after the court's deadline for amending pleadings and because Plaintiffs knew or should have known long before that date that Northwestern Bell was a possible defendant,[9] we hold that the district court did not abuse its discretion in denying leave to amend. *First City Bank*, 820 F.2d at 1133 ("[w]hether or not, had we been sitting as the trial court, we might have granted Plaintiff's motion to amend, we cannot say the district court abused its discretion").

To the extent that Plaintiffs' motion asserted retaliation claims arising subsequent to the complaint, it was properly styled a motion to supplement. Fed.R.Civ.P. 15(d) (events occurring since date of complaint are proper for inclusion in a supplemental pleading). However, we need not address whether the district court's refusal to supplement Plaintiffs' complaint with these claims was an abuse of discretion, because we have already determined that there is no proper defendant in this case.

**AFFIRMED.**

---

**9.** Plaintiffs' counsel conceded at oral argument that their failure to previously add Northwestern Bell as a defendant was a strategic decision.