**Debbie L. SMITH, Plaintiff,**

v.

**NORWEST FINANCIAL WYOMING, INC., a Wyoming corporation, Norwest Financial Inc., an Iowa corporation, and Curtis Mangus, an individual, Defendants.**

No. 95–CV–1043–B.

United States District Court,
D. Wyoming.

Oct. 15, 1996.

Les Brown, Frank R. Chapman, Beech Street Law Offices, Casper, WY, for plaintiff.

Jeffrey C. Brinkerhoff, Bruce N. Willoughby, Brown, Drew, Massey & Sullivan, Casper, WY, Dirk deRoos, Jo Francis Walsh,

Faegre & Benson, Denver, CO, Michael T. Bates, Des Moines, IA, for defendants.

### ORDER ON POST TRIAL MOTIONS

BRIMMER, District Judge.

These matters come before the Court on various motions from both parties. The Court has reviewed the materials on file, heard the parties' oral arguments, and is fully informed in the premises of all post trial motions. The Court therefore FINDS and ORDERS as follows:

### Background

Plaintiff Debbie Smith ("Smith") worked for Defendant Norwest Financial Wyoming, Inc. ("Norwest Wyoming") as an account service representative in Casper, Wyoming. Curtis Mangus was Smith's supervisor. Mangus sexually harassed Smith and created an intimidating and humiliating work environment by uttering vulgarities and verbally degrading women and minorities.

After twenty-three months of abuse, Smith resigned and took a position as a bookkeeper with a furniture company. Smith sued Defendants and asserted a claim for sex discrimination. A jury found the Defendants liable to Smith for her sexually hostile work environment claim. Smith was awarded $359,000 in damages on August 2, 1996, $89,000 in fringe benefits and $270,000 in compensatory damages.

### Analysis

Defendants have filed numerous post trial motions in an attempt to reduce or set aside the jury's award. The Court will address each one in turn.

### I. Defendants' Motion to Alter or Amend Judgment

#### A. Compensatory Damages

Defendants' Motion to Alter or Amend Judgment focuses on the statutory caps on compensatory and punitive damages in Title

VII actions after the 1991 amendments. 42 U.S.C. § 1981a(b)(3) provides as follows:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
>
> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
>
> (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

In support of their Motion, Defendants submit an affidavit of Wayne S. Goodman, Assistant Vice President and Director of Personnel. Mr. Goodman's affidavit states that Defendant Norwest Financial, Inc., ("Norwest Financial") on December 15, 1995, had 445 employees, 387 full-time and 58 part-time. Norwest Financial has had fewer than 501 employees in each of the 20 or more calendar weeks in the current or preceding calendar year. As a result, Norwest Financial argues the award of $270,000 in compensatory damages exceeds the ceiling under 42 U.S.C. § 1981a(b)(3)(C). The Court agrees.

Plaintiff argues that two different management employees of Norwest Financial subsidiaries,[1] Patrick Tom and Ted Bertleson, each

---

1. Plaintiff puts great weight in the fact that Ted Bertleson and Patrick Tom both testified in their depositions that they were employed by "Norwest Financial." The Court, however, finds these comments immaterial. Both Tom and

Bertleson worked for Norwest Financial subsidiaries. When speaking colloquially of their employer, the Court has no doubt that Tom and Bertleson both refer to their employer as "Norwest Financial." Lay people are rarely con-

testified via deposition that Norwest Financial had over 500 employees.[2] Smith also contends that Defendants had a duty to refute this testimony during trial.

■ This argument has two problems. First, Tom and Bertleson were not employed by Norwest Financial, they were both employed by subsidiaries. Neither employee was an officer, director, or managing agent of Norwest Financial, therefore, their depositions cannot bind Norwest Financial. Fed. R.Civ.P. 32(a)(2). Because both parties denied at trial that they knew Norwest Financial's total number of employees, their depositions could only be used to impeach them. Fed.R.Evid. 801(d)(1). As a result, Goodman's affidavit is the only evidence on the number of employees at Norwest Financial properly before this Court. Second, because the number of employees and the law about the statutory caps is not submitted to the jury, Defendants had no duty to present this evidence at trial. Paring down the verdict subject to Title VII's damage ceilings is proper on post trial motion. *Sasaki v. Class*, 92 F.3d 232, 236 (4th Cir.1996); *Hogan v. Bangor & Aroostook R.R. Co.*, 61 F.3d 1034, 1037 (1st Cir.1995).

In short, Mr. Goodman is clearly an "officer, director, or managing agent" of Norwest Financial under Fed.R.Civ.P. 32(a)(2). His affidavit constitutes a binding party admission. In the absence of any evidence disputing Mr. Goodman's figures, the Court accepts his affidavit and orders the compensatory damages reduced from $270,000 to $200,000.[3]

### B. *Fringe Benefits*

■ In Defendants' Motion to Alter or Amend the Judgment, Defendants argue, albeit implicitly, that the total verdict should be reduced from $359,000 to $200,000 to comply with Title VII's caps. Included in the original $359,000 award was an advisory verdict as to lost fringe benefits, commonly known as "front pay." Whether front pay is included under the statutory ceiling in Title VII as amended is a novel issue of law not yet addressed by this, or any other Circuit.[4] The Court need not decide this novel issue of law because the Court, in its discretion, holds that the jury's advisory verdict of $89,000 in fringe benefit damages for lost profit sharing is excessive when viewed in light of the sizeable compensatory damage award.[5] *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212, 1214 (10th Cir.1992); *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1426–27 (10th Cir.1991); *Wulf v. City of Wichita*, 883 F.2d 842, 873 (10th Cir.1989).

### II. *Defendants' Motion for Judgment as a Matter of Law or New Trial*

Defendants assert numerous arguments as to why this Court should set aside the jury's verdict. The Court will address them one at a time.

### A. *"Employer" and Subject Matter Jurisdiction*

[4] Defendants argue that the Court never had subject matter jurisdiction to hear this case because no Defendant was an employer as defined by 42 U.S.C. § 2000e(b).[6]

---

cerned with the proper legal name of their employer. Legal niceties such as this only impress lawyers.

2. During their depositions, Mr. Tom said Norwest Financial had over 500 employees and Mr. Bertleson stated Norwest Financial had around 5,000 employees. Both dismissed these figures during their trial testimony as mere guesses.

3. Smith never requested leave of the Court to depose Goodman nor did she present any evidence contradicting his sworn statement (other than the depositions of Tom and Bertleson which are inadmissible for purposes other than impeachment as discussed above).

4. The Court found only two cases addressing this issue. Both held that front pay was not included

in calculating damages under the new caps of Title VII. See *Williams v. Pharmacia Opthalmics*, 926 F.Supp. 791 (N.D.Ind.1996); *Ward v. Tipton County Sheriff Dep't*, 937 F.Supp. 791 (S.D.Ind. 1996).

5. Setting aside the judgment for fringe benefits obviates the need for the Court to address Defendants' ERISA argument.

6. Defendants assert that Norwest Wyoming has 13 employees. As a result, if Smith cannot show that Norwest Financial was her employer for the purposes of Title VII, she loses (an employer must have 15 employees to be subject to Title VII).

Because no Defendant meets the definition of employer under Title VII, Defendants argue, the Court does not have federal question jurisdiction pursuant to 28 U.S.C. § 1331.

██ This argument is flawed. It posits that a plaintiff must prove that the defendant is bound by federal law for the Court to have jurisdiction. The problem with this argument is that Norwest Financial, or any other Defendant, could admit to being an employer for the purposes of Title VII. This admission would bind Norwest Financial. Under Defendants' theory this admission waives subject matter jurisdiction as to Norwest Financial. Parties cannot consent to nor can they waive subject matter jurisdiction. *Insurance Corp. of Ireland v. Compagnie des Bauxites,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).

This Court has subject matter jurisdiction under § 1331 unless Smith's claim for relief is "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine,* 415 U.S. 528, 536, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974). Plaintiff pled and tried a case with all the indicia of sexual harassment. Thus, the definition of employer under 42 U.S.C. § 2000e(b) is important only on substantive, rather than jurisdictional grounds. *E.E.O.C. v. Chicago Club,* 86 F.3d 1423 (7th Cir.1996). The Court will consider the substantive merits of Defendants' argument next.

**B.** *"Single Integrated Enterprise" Under Frank v. U.S. West*

██ Defendants contend Smith did not show that Norwest Wyoming and Norwest Financial were a "single integrated enterprise," under the four factor test announced in *Frank v. U.S. West,* 3 F.3d 1357 (10th Cir.1993). The Court submitted instructions to the jury on the four factor Frank test and the jury specifically found that Norwest Wyoming and Norwest Financial were a "single integrated enterprise." *See* Jury Instructions 10, 11, and Question 6 on the Special Verdict Form. The jury considered, and now the Court must reconsider, evidence concerning the following four factors: 1) interrelation of operations; 2) centralized control of labor relations; 3) common management;

and 4) common ownership or financial control. *Id.* at 1362.

(1) *Interrelation of Operations*

The following is evidence produced in this case that the Frank Court listed as traditional examples of interrelated operations: 1) Norwest Wyoming's entire computer system was generated by Norwest Financial. Norwest Financial monitored the number of loans issued, the amount of money generated, all sales information from all branch offices, and essentially anything else that went into the computer. R. Vol. I at 106; R. Vol. II at 246; R. Vol. II at 133; 2) Norwest Financial produced Norwest Wyoming's paychecks. R. Vol. I at 106; 3) Norwest Financial controlled Norwest Wyoming's lease agreement. R. Vol II at 164; 4) Norwest Financial maintained a checking account for Norwest Wyoming. R. Vol. II at 164; 5) Norwest Financial controlled all benefits, supplies, raises, and personnel policies. R. Vol. I at 106; R. Vol. II at 82; R. Vol. II at 184; 6) Norwest Financial distributed monthly reports detailing the performance goals for each employee. R. Vol. I at 78.

(2) *Centralized Control of Labor Relations*

The following is evidence presented in this case that the Frank Court listed as traditional indicia of centralized control of labor relations: 1) Smith's 1994 W–2 listed Norwest Financial in Des Moines as the address of her employer. R. Vol. I at 117; 2) Norwest Financial monitored Norwest Wyoming employees' time cards and overtime via computer. R. Vol. II at 246; 3) Norwest Financial controlled all benefits, supplies, raises, and personnel policies. R. Vol. I at 106; R. Vol. II at 82; R. Vol. II at 184; 4) Norwest Financial produced personnel manuals containing rules regarding: personal telephone calls, smoking, how to report theft, who pays what bills, what to do if contacted by the media, and many other day to day activities. R. Vol. II at 255; 5) Management manuals were produced by Norwest Financial R. Vol. II at 129; and 6) All sexual harassment complaints are filed in Des Moines. R. Vol. III at 5.

### (3) *Common Management*

Plaintiff produced the following evidence of common management: 1) Three of the twelve officers and directors of Norwest Wyoming are also officers of Norwest Financial.[7] Of the twelve officers and directors of Norwest Wyoming, only one, Curtis Mangus, actually works for Norwest Wyoming. The other eleven officers and directors are associated with either Norwest Financial or its holding company in Minneapolis. Pl. Exhibit 8, State of Wyoming 1995 Annual Profit Corporation Report to Secretary of State.

### (4) *Common Ownership*

It is undisputed that Norwest Financial is the sole shareholder of Norwest Wyoming.

Considering all four factors together, Plaintiff met her burden of showing Norwest Wyoming and Norwest Financial were a "single integrated enterprise." Smith produced evidence of most, if not all, of the elements required in each of the four *Frank v. U.S. West* factors. The Court cannot conclude that the jury's finding of a single integrated enterprise was wrong as a matter of law.

## C. *Constructive Discharge*

■ Defendants contend an instruction on constructive discharge was improperly given as Smith's claim for constructive discharge was dismissed with prejudice by summary judgment order. Defendants are correct, there was no constructive discharge claim. The Court gave Instruction Number 8, which touched on the law of constructive discharge, to advise the jury on possible factors that should be considered in analyzing Smith's hostile work environment claim. The instruction was not given as a separate cause of action, there was no space on the special verdict form to allocate damages for constructive discharge.

Instruction Number 8 clearly states if a reasonable person in Smith's situation would consider her job intolerable, the jury could compensate Smith for backpay damages and fringe benefits (only). Even if the instruc-

tion was improperly given, Defendants have not been prejudiced because neither backpay nor fringe benefits are being awarded.

## III. *Defendants' Motions to Reduce the Jury's Award*

■ In Defendants' Motion for Judgment as a Matter of Law and Defendants' Motion for Remittitur, Defendants argue this Court should reduce the compensatory damage award (originally $270,000, now reduced to $200,000 pursuant to the statutory ceiling) for two reasons. First, Defendants argue the evidence of Smith's emotional suffering does not support a $200,000 award. Second, Defendants contend a $200,000 award evinces that passion and prejudice contributed to the jury's award.

■ The Tenth Circuit has held plainly excessive damages may support an inference that passion or prejudice contributed to the jury's award. *Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1262 (10th Cir.1995). "[A]bsent an award so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the damages is considered inviolate." *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1168 (10th Cir.1981) (en banc).

In the abstract $200,000 is a sizeable verdict, but viewed in conjunction with the totality of abuse Smith endured it does not "shock the judicial conscience." Smith was subjected to the invective of Curtis Mangus for 23 months. Examples of Mangus's comments are as follows:

1. "Debbie, if you'd quit dating Mexicans, maybe you'd find a decent man."

2. "Debbie, you already killed one boyfriend. You'd drive any man to drink." (One of Smith's ex-boyfriends died of pancreas disease.)

3. "You must be a sad piece of ass, you can't even keep a man."

---

**7.** Richard Harris, Eric Torkelson, and Denise Holck are all officers of both Norwest Wyoming and Norwest Financial.

4. A co-employee told Smith not to take a particular action or "[Mangus] will take a bite out of your butt." Mangus overheard this statement and replied "That would be the worst piece of ass I could have."

5. Mangus told Smith "You need to come back in a better mood. Get a little over the weekend."

Smith testified the sexual harassment she endured caused the following: 1) nausea; 2) migraines;[8] 3) humiliation, degradation, and loss of self-respect; 4) sleeplessness and the consumption of sleeping pills; 5) frequent crying; 6) loss of a loan officer career;[9] 6) stress in Smith's relationship with her daughter. *See* R. Vol. I at 165–169.

Mangus's comments to and treatment of Smith was even more damaging considering Norwest Wyoming had an intimate office setting. All of Smith's co-employees could hear Mangus demeaning her. R. Vol. I at 118–19. Smith testified that the salary and benefits are what kept her at Norwest Wyoming. When Farnham Furniture approached Smith about working for it, she took the job even though the benefits did not compare to Norwest Wyoming. R. Vol. I at 154–56. After reviewing Smith's overall situation, the Court finds there is enough evidence of pain and suffering to uphold the jury's award of $200,-000 in compensatory damages.[10]

#### IV. *Plaintiff's Motion for Sanctions*

Plaintiff requests Defendants be sanctioned for actions that occurred at the settlement conference in front of Magistrate Judge Beaman. While the Court agrees with Plaintiff that defense counsel Bates may have violated the rules concerning settlement conferences, the Court declines to sanction Defendants.

8. Smith testified that she had experienced migraines prior to working for Norwest Wyoming, but she stated that they became more frequent while working for Mangus. Smith's doctor said her migraines were stress-related. R. Vol. I at 166.

#### *Conclusion*

For these reasons, the Court **ORDERS:** Defendants' Motion to Alter or Amend Judgment is granted; Defendants' Motion for Judgment as a Matter of Law or Alternatively for a New Trial is denied; Defendants' Motion for Remittitur is denied; and Plaintiff's Motion for Sanctions is denied. Plaintiff's compensatory damage award is reduced to $200,000 and the jury's advisory verdict of $89,000 in fringe benefits is set aside.

9. Prior to working for Norwest Wyoming, Smith worked for AVCO as a loan officer. The job she took at Farnham Furniture was as a bookkeeper.

10. It should be noted that the Court set aside the front pay (fringe benefit) damage award in light of the sizeable compensatory damage award.