Spring WALKER, Plaintiff,

v.

**TOOLPUSHERS SUPPLY CO.,** Black Hills Trucking, Inc., Belle Fourche Pipeline Co., True Drilling Co., True Oil Co., which are all part of a conglomerate known as True Companies, Defendants.

No. 96–CV–1029–J.

United States District Court,
D. Wyoming.

Feb. 10, 1997.

Randall T. Cox, Gillette, WY, Weston W. Reeves, Casper, WY, for plaintiff.

Richard E. Day, Scott E. Ortiz, Williams, Porter, Day & Neville, Casper, WY, John J. Blomstrom, True Oil Company, Casper, WY, for defendants.

## *ORDER GRANTING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS BLACK HILLS TRUCKING, INC., BELLE FOUCHE PIPELINE CO., TRUE DRILLING, CO., AND TRUE OIL CO.*

ALAN B. JOHNSON, Chief Judge.

This matter is before the court on the Motion for Summary Judgment filed by defendants Black Hills Trucking, Inc., Belle Fourche Pipeline, Co., True Drilling Co., and True Oil Co.

The court has considered the motion, all materials filed in support of and in opposition to the motion, the memoranda and is fully advised.

### INTRODUCTION

Plaintiff Spring Walker, a former salesperson for Toolpushers Supply (Toolpushers) brings a claim of sex discrimination in violation of Title VII, 42 U.S.C., against Toolpushers. Plaintiff contends that in addition to Toolpushers, all of the other defendants are liable on this claim as her "employer" under an integrated enterprise theory. All defendants except Toolpushers have moved for summary judgment on the basis that they are not plaintiff's employer for purposes of Title VII.

### STANDARD FOR SUMMARY JUDGMENT

The standard for the grant of summary judgment is well known.

Summary judgment will be granted if "the pleadings, depositions, ... and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A 'material' fact is one 'that might effect the outcome of the suit under the governing law.'" *Farthing v. City of Shawnee,* 39 F.3d 1131 (10th Cir.1994) quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). And "a

'genuine' issue is one where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* The court views the evidence in the light most favorable to the nonmoving party. *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). "The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993). "To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings." *Id. citing* Fed.R.Civ.P. 56(e) and *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. *Besso v. Cummins Intermountain Inc.,* 885 F.Supp. 1516, 1520 (D.Wyo.1995).

## UNDISPUTED FACTS

Spring Walker was employed by Toolpushers Supply at its Gillette, Wyoming, store from April 15, 1990, through May 15, 1995. Toolpushers is a corporation. The president of the corporation is Diemer True. The manager of its business operations is Bob Selby. The shareholders of Toolpushers are Diemer True, Hank True and David L. True.

Each of the other defendants are owned by one or more of the following members of the True family: Jean D. True, H.A. True, III, Diemer True, and David L. True. None of the other defendants is a parent corporation to Toolpushers or a subsidiary of Toolpushers. Less than five percent of Toolpushers' annual sales are to companies that are owned by members of the True family.

True Companies is trade name registered with the Wyoming Secretary of State and is not a separate business organization or holding company. True Companies does not conduct business. True Companies as a trade name refers to the various companies owned by some or all of the members of the True Family listed above. Toolpushers' profit and loss statement is not consolidated with that of any other company.

Defendant True Oil has a treasury department (which includes a payroll office and human relations office), an accounting department, insurance department and a legal department. Toolpushers, and apparently some of the other defendants, each pay True Oil to provide various human relations services, accounting, legal, insurance and payroll services. The proportional share of Toolpushers' cost for these services is determined annually. Toolpushers currently pays True Oil $61,000 a month for these services. Toolpushers pays that expense out of its own operating revenue. The operating revenue for Toolpushers is kept separate from the other defendants' revenue. Although True Oil employs the accounting personnel, some of its employees are designated specifically to work on Toolpushers' accounts. Three members of the True family; Diemer True, Hank True, and David True have control "as a practical matter" over True Oil Company's treasury department.

Toolpushers' checks are written with a stamped signature by a machine in True Oil's payroll department. Bob Selby, the manager of Toolpushers, has the power to authorize the writing of Toolpushers' checks in amounts under $10,000. Diemer True, as president, must authorize checks in amounts over $10,000. Toolpushers' payroll checks are written out of its own funds and show the name of the payor as "Toolpushers Supply Co."

Toolpushers' Gillette store rents its building from defendant Black Hills. True Ranches, not a party to this case, owns the property where Toolpushers has a yearly hunting camp available to salespersons and their valued customers.

Bob Selby has authority to fire Toolpushers' employees without authorization from the president of the company. However, Mr. Selby's decisions to hire employees, promote employees and give a raise to employees must be approved by Diemer True as president. There is no evidence that any person

other than Mr. Selby as manager or Diemer True as president have authority to make any employment decisions. Mr. Selby, as manager, directs Toolpushers' day-to-day activities.

All defendants have the same mailing address, physical address and telephone number, located in Casper, Wyoming. Defendants have common vacation, drug and sexual harassment policies. Although there is a common vacation policy, the manager of each company administers the vacation policy in a different way. True Oil is the manager of the 401(K) plan for Toolpushers and the other defendants. Toolpushers does not have an employee handbook. Neither does True Oil. However, Black Hills Trucking does have an employee handbook that is not used by any of the other defendants.

Edith Ogle is the assistant personal manager of True Oil's human relations department, which is part of its treasury department. She is available as a resource for each of the True Companies and performs such services as advertising of jobs. For job vacancies outside of Casper, her involvement varies from company to company and with the locations of each job. Ms. Ogle has never participated in an interview of a prospective employee for a Toolpushers' store. Ms. Ogle is not authorized to direct Toolpushers or Mr. Selby that any certain employment practices be followed. D. True depo at 34. Toolpushers makes all of its own personal decisions.

When each of the defendants hires a new field employee the employee receives the same packet of information prepared by True Oil's payroll office for all of the companies. This packet contains information on insurance and the 401(K) program, a COBRA notice, a W-4 form, application of employment, the vacation, drug and sexual harassment policies and the like.

For purposes of government reporting Ms. Ogle prepares a single EEO-1 report for all of the defendants.

## DISCUSSION AND ANALYSIS

■ Plaintiff contends that her "employer" for purposes of Title VII consists of a single "integrated enterprise" operated by the common owners of all the companies—members of the True family—and all defendants are part of that integrated enterprise. Therefore, she contends that all defendants are her "employer" within the meaning of 42 U.S.C. § 2000e(b). In a civil rights case, "superficially distinct entities may be exposed to liability upon a finding they represent a single, integrated enterprise: single employer." *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763 (*quoting Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983)). This integrated enterprise theory is borrowed from the test of employer promulgated by the National Labor Relations Board (NLRB). *Evans v. McDonald's Corporation*, 936 F.2d 1087, 1089 (10th Cir. 1991) (holding that although franchisor may have stringently controlled the manner of its franchisee's operations, conducted frequent inspections, and provided training for franchise employees, it did not have financial control over operations or control over franchisee's labor relations with his employees and therefore could not be an employer). In a recent case, *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2nd Cir. 1995), the Second Circuit noted that the NLRB's use of the integrated enterprise theory to ascertain whether two entities constituted a single employer in context of labor disputes was approved by Supreme Court in *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965).

Initially the theory of integrated enterprises was used in cases in which the actual employer had less than 15 employees and therefore the jurisdictional minimum for Title VII would not be met absent a finding that the actual employer and another entity were found to be a single employer. See *EEOC v. Financial Assurance, Inc.*, 624 F.Supp. 686 (W.D.Mo.1985); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir. 1977); *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 932 (11th Cir. 1987). In *Evans, supra,* the technical employers, two franchises, had been sold and one had gone out of business, so plaintiff

sought to hold the franchisor liable under the integrated enterprise theory. 936 F.2d at 1089 n. 2.

In this case, unlike many cases raising the integrated enterprises theory, it is clear that the actual employer, Toolpushers, has more than 15 employees. It is defendants' contention that plaintiff's attempt to proceed against all defendants is an attempt to avoid the damage cap imposed by 42 U.S.C. § 1981a(a)(3). That statute allows a sliding scale for damages that increases with the number of employees. *Id.*

In the case of *Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir.1993), the Tenth Circuit Court of Appeals set forth the applicable law for determining in federal employment discrimination cases if a parent corporation is liable for acts of its subsidiary.

> Depending on the facts of the case before them, the courts have applied four different tests to determine whether a parent corporation is liable for the acts of its subsidiary. While we decline to adopt any one of these tests as the exclusive test for use in all employment discrimination cases, we today apply the integrated enterprise test ...

3 F.3d at 1362.

In addition to the integrated enterprise test, the Tenth Circuit identified three other tests that could be used. *See Id.* at n. 2. Plaintiff does not rely on any of the other three tests and therefore the court will analyze the issue under the theory brought by plaintiff.

In *Frank*, the Tenth Circuit sets forth the four factors to consider in applying the integrated enterprise test:

(1) interrelation of operations;

(2) centralized control of labor relations;

(3) common management; and

(4) common ownership or financial control.

3 F.3d at 1367.

In this case plaintiff contends that her materials in opposition to summary judgment raise genuine issues of fact for the integrated enterprise test. Defendants contend that the undisputed facts show they are not plaintiff's

employer under an integrated enterprises theory.

This case is distinguishable from the *Frank* case and a Wyoming case relied upon by plaintiff, *Smith v. Norwest Financial Wyoming, Inc.*, No. 95–CV–1043–B, —— F.Supp. —— [1996 WL 885785] (October 15, 1996 D.Wyo.), because those cases involved parent and subsidiary corporations. Here we do not have parent and subsidiary corporations. Instead we have corporations or partnerships which are all owned by the same group of persons.

As plaintiff points out, the integrated enterprise test has been applied to entities that are closely related but are not parent and subsidiary corporations. In particular plaintiff relies upon one early case, *Baker, supra.* In that case the exact relationship between the companies was not clear. For example in *Frank*, the court cited *Baker* for the proposition that "parent issued regimented rules regarding employment practices which subsidiaries were required to follow." 3 F.3d at 1357. In a related case involving the same parties as in *Baker* the exact nature of the relationship between the parties was so unclear that the West Publishing's headnote service could only describe the relationship as an "affiliate or subsidiary." *Baker v. Stuart Broadcasting Co.*, 505 F.2d 181 (8th Cir.1974).

Although the theory has been applied in cases that involve related entities that are not parent and subsidiary, it is this court's opinion that the test fits less well in such cases. *C.f. EEOC v. State of Illinois*, 69 F.3d 167, 171 (7th Cir.1995) (holding that principal that animates the doctrine is not limited to the technical relations of parent to subsidiary corporation reached by the integrated enterprise theory and applying the "indirect-employer" theory to age discrimination case). Nonetheless, the test has been applied in cases other than parent/subsidiary cases and the court will apply it in this case.

 At the outset, this court notes, as did the *Frank* court, that "[t]he law allows businesses to incorporate to limit liability and isolate liabilities among separate entities." 3 F.3d at 1362. This court agrees with the *Frank* Court that corporate shields of liabili-

ty should be disregarded "only in extraordinary circumstances." *Id.*

Defendants contend that the issue of the relationship between the True Companies has already been adjudicated by the Wyoming Supreme Court in *True Oil Company v. Sinclair Oil Corp.,* 771 P.2d 781, 794 (Wyo. 1989) (holding that although there was common ownership, because there was separate management, employees, and financial affairs, the acts of the affiliates were not the acts of True Oil). That decision is not controlling in this case because (1) plaintiff was not a party to that case, (2) defendants other than True Oil were not parties to that case, and (3) that case did not involve application of the integrated enterprise theory for purposes of Title VII. The court will now apply the four part test articulated in *Frank* to examine if there is a material issue of fact on the issue of whether defendants are a single integrated enterprise.

### 1. Interrelation of operations

■ In this case there is not even a plausible argument that Toolpushers shares an interrelation of operations with any of the defendants other than True Oil. With regard to True Oil the undisputed facts show that although Toolpushers purchases many administrative services from True Oil, the companies consistently keep their operations separate. Unlike the case cited by plaintiff, *Smith v. Norwest Financial Wyoming, Inc.,* No. 95–CV–1043–B, (October 15, 1996 D.Wyo.), there is no evidence that any other defendant controls Toolpushers' leases. The sharing of common location does not, by itself, establish interrelation of operations. In this case it is undisputed that the manager of Toolpushers, Mr. Selby, is responsible to its president and not to True Drilling for making the company profitable as an independent operation.

■ "Merely because the project supervisors ultimately reported to officers in the parent company is not enough to present a material factual dispute, because this exercise of control is not to a degree that exceeds the control normally exercised by a parent corporation." *Frank* at 1362. Thus, the fact that Mr. Selby is responsible to Diemer

True, an individual who also has an ownership interest in True Oil, is insufficient to show interrelations of operations.

■ Facts showing that the parent corporation benefits from the work of the subsidiary or that one of the parent's employees is an occasional consultant for a subsidiary's project is not evidence of interrelated operations. *Id.* Thus, the fact of Ms. Ogle's occasional work as a resource or consultant for Toolpushers' personnel matters does not establish interrelations of operations.

Although many factors involved in Toolpushers' purchase of administrative services from a single source are evidence of some interrelation of operations, on balance the court finds that an issue of fact on this question is not raised.

### 2. Centralized Control of Labor Relations

This is an "important factor" in the four-part test. *Frank,* at 1362. Although the Tenth Circuit in *Frank* termed centralized control of labor relations "an important" factor, nonetheless, like other Circuits it further recognized that: "The *critical* question is what entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.* (underlined emphasis added); *Schweitzer, supra,* 104 F.3d at 763 (Control of labor relations "has traditionally been most important, with courts refining their analysis to the single question, 'What entity make the final decisions regarding employment matters related to the person claiming discrimination.'") (*quoting Trevino,* 701 F.2d at 404); *Cook, supra,* 69 F.3d at 1241 ("We focus our inquiry, as [the Fifth, Sixth and Eighth] circuits do, on the second factor, centralized control of labor relations.")

■ "A parent's broad general policy statements regarding employment matters are not enough to satisfy this prong." *Id.* "To satisfy the control prong, parent must control the day-to-day employment decisions of the subsidiary." *Id.* A parent can be the "employer" and plan administrator for ERISA purposes without having control over the day-to-day employment decisions of its

subsidiary for purposes of this prong of the integrated operations test. *Id.* at 1363 n. 5.

This court agrees with *Eichenwald v. Krigel's, Inc.*, 908 F.Supp. 1531, 1541 n. 9 (D.Kan.1995), that "[c]entralized control of labor practices is not only the most critical factor in the four factor analysis, but it is necessary for the two corporate entities to be treated as one." *See Evans*, 936 F.2d at 1090 (where court found that franchisor had no control over franchisee's labor relations with his employees, as a matter of law there was insufficient control to make franchisor liable as an employer under Title VII).

In this case, defendants' undisputed evidence shows that the corporations have been maintained as separate entities and Toolpushers retained day-to-day control over its employment decisions. There is no evidence that raises a material issue of fact on whether any person or entity other than Toolpushers controls its day-to-day employment decisions.

There is no evidence that Diemer True directs or approves any employment decisions in True Oil Company or any of the other companies. Aside from the vague evidence of part ownership, there is no evidence of what role, if any, Diemer True plays in the management of the other companies, except that he "manages" Black Hills Trucking, as well as Toolpushers. Ogle depo p. 58. What form that management takes or what those duties consist of is not in the record. The only evidence in this record is that Doug Milliken, a non-family member, manages True Oil Company. Ogle depo at 59. There is absolutely no evidence that Mr. Milliken is in any way involved in Toolpushers' labor decisions.

Thus, this case is distinguishable from many non-parent/subsidiary case relied upon by plaintiff. In those cases, there was undisputed control of day-to-day operations by a single individual who had ownership interest in the related entities. *McKenzie*, 834 F.2d at 933 (finding material issue of fact for integrated enterprise theory where same individual was president of both companies and also controlled personnel management of both companies); *EEOC v. Alford*, 142 F.R.D. 283 (E.D.Va.1992) (allowing limited discovery on issue of integrated enterprise where it was uncontested that sole owner of all entities controlled daily operations and was ultimate decisionmaker regarding personnel matter in all entities).

In *EEOC v. Financial Assurance, Inc.*, 624 F.Supp. at 690, there was "an observable degree of centralized control of labor relations in some respects." 624 F.Supp. at 691 n. 1.

This case is easily distinguishable from the *Smith* case relied upon by plaintiff. In that case the parent corporation exercised a significant amount of control over the day-to-day labor relations of the subsidiary. It monitored the subsidiary's employee's time cards and overtime, it controlled all benefits, supplies, raises and personnel policies, it produced personnel manuals containing rules regarding such day-to-day activities as personal telephone calls, smoking, who pays what bills, what to do if contacted by the media. It produced the management manuals to be followed by the subsidiaries' managers. *Smith*, slip op. at 9.

■ As noted, under *Frank* it is not the ability to control day-to-day operations, but the actual control over such operations that is determinative for purposes of the integrated enterprise theory. In *Smith* there was such actual control. In this case there is no evidence of such actual control over the day-to-day activities.

### 3. Common Management

The evidence is undisputed that Mr. Selby manages Toolpushers' day-to-day operations and that an individual named Milliken manages True Oil's day-to-day operations. To the extent that Diemer True, as President, manages Toolpushers, there is no evidence that he also manages the operations of True Oil or of any of the other defendants.

■ Under *Frank*, the existence of one common manager is insufficient to establish a disputed material fact under this prong. 3 F.3d at 1364. The *Frank* case did not involve common officers so it is not clear if the existence of such common officers could, by itself, establish an issue of fact. However,

from the list of cases cited in *Frank* it appears that common officers would be relevant to this prong *if* there were also some element of management by the officers. 3 F.3d at 1364. For example, in *Baker*, 560 F.2d at 392, where the same individual was president of both corporations and where that individual had day-to-day control of both operations and had issued strict policy manuals regimenting daily operations for the managers, the court found common management. Similarly in *McKenzie, supra*, there was a common president of both companies, who, like in *Baker*, controlled personnel management in both companies.

In the *Smith* case, *supra*, the court appeared to find common management from the fact that there were common officers and directors. However, in the case of closely held corporations, such common officers would often be a result of common ownership. What is more important is whether any common officers translates into common management of the day-to-day activities of each entity. In *Schweitzer, supra*, 104 F.3d at 765, the Fifth Circuit noted that none of the four factors concentrates on such factors as common officers. Thus, the court held that it was error to give a jury instruction that directed the jury to look at such "unimportant information" as stock control and common officers.

Further, although we have the admission that Diemer True serves as an officer or director of each True Company corporation and is a partner in the partnerships, we have little or no information about the other officers and directors or partners of each entity. There is nothing by way of charts or other records that clearly set out the relationships in a way they could be compared. Further, in the absence of any evidence that Diemer True controls the day-to-day activities of the other entities, common officers does not translate into common management.

### 4. Common ownership or financial control

■ Defendants concede common ownership. However, in view of the strong policy against disregarding corporate forms in imposing liability, there must be much more

than common ownership of entities to establish liability. Thus, under *Frank*, ownership "standing alone, can never be sufficient to establish." 3 F.3d at 1364. As noted above, in *Schweitzer, supra*, the Fifth Circuit went so far as to describe stock control as "unimportant information," compared to involvement in the daily employment decisions. 104 F.3d at 765.

### CONCLUSION AND ORDER

Having carefully considered the entire record on summary judgment, the court finds that defendants have met their burden on summary judgment of showing that there is no material issue of fact on the issue that they are not a single integrated enterprise that includes Toolpushers. In response, plaintiff's evidence does not raise an issue of material fact on this claim. Therefore defendants are entitled to judgment as a matter of law.

Accordingly the court will grant summary judgment in favor of defendants Black Hills Trucking, Belle Fourche Pipeline, True Drilling and True Oil Company on this issue.

### ORDER

Based upon the foregoing it is therefore

ORDERED that defendants Black Hills Trucking, Belle Fourche Pipeline, True Drilling and True Oil Company's Motion for Summary Judgment is GRANTED. It is further

ORDERED that defendants Black Hills Trucking, Belle Fourche Pipeline, True Drilling and True Oil Company be removed from the caption of this case for purposes of the jury trial.