**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 5, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PATRICIA CALLOWAY,

Plaintiff-Appellant,

v.

AEROJET GENERAL
CORPORATION,

Defendant-Appellee.

No. 10-4133
(D.C. No. 1:08-CV-00162-DAK)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Patricia Calloway appeals the district court's grant of summary judgment in

favor of her former employer, Aerojet General Corporation, in her Title VII

action alleging sexual harassment. We affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Because "[s]ummary judgment was granted for the employer, . . . we must take the facts alleged by the employee to be true." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 747 (1998). In late 2003, shortly after Ms. Calloway began working as a receptionist at Aerojet's small facility in Utah, she began a consensual sexual affair with David Dibell, the highest-ranking Aerojet employee in Utah. During their extramarital relationship, which lasted approximately two years, Ms. Calloway was promoted to a position as Mr. Dibell's secretary.

Ms. Calloway did not complain about the situation, but other people did. In August 2004 an employee telephoned Aerojet's human-resource department at its corporate headquarters in Gainesville, Virginia, to report that the couple's workplace behavior was attracting unfavorable notice, particularly from an employee of Aerojet's prime contractor. And another individual called the contractor's compliance hotline to complain that Ms. Calloway received preferential treatment due to her relationship with Mr. Dibell.

In response to these reports, Aerojet began an investigation and scheduled a special training session on sexual harassment in the Utah office. A human-resources representative traveled to Utah and taught the sexual-harassment session, which Ms. Calloway attended. The representative also met with several employees, who related their perception that Mr. Dibell and Ms. Calloway were engaged in a consensual sexual relationship. As a result, the employees believed,

Mr. Dibell displayed favoritism toward Ms. Calloway. When Mr. Dibell was questioned, however, he denied any personal relationship with Ms. Calloway.

The next week, the director of human resources and division counsel came to Utah to conduct further interviews. Mr. Dibell again denied any relationship with Ms. Calloway beyond that of supervisor and friend. Ms. Calloway, too, denied any improper conduct on the part of Mr. Dibell. At the end of the interview with Ms. Calloway, the company officials reviewed Aerojet's anti-sexual harassment policies and reporting procedures. They gave her their business cards, asking her to call if she were subjected to any harassing behavior.

Mr. Dibell's and Ms. Calloway's repeated disclaimers meant an inconclusive end to the investigation. Mr. Dibell, however, was reprimanded for creating the perception of an improper relationship with Ms. Calloway and warned against any further unprofessional conduct. Mr. Dibell told Ms. Calloway about the letter and stated that they should not be seen together.

But the affair continued for at least another year. In the summer or fall of 2005, Ms. Calloway informed Mr. Dibell that she would not be intimate with him until he started proceedings to divorce his wife. Mr. Dibell did not comply with her demand. Notwithstanding her ultimatum, they engaged in perhaps five more consensual sexual encounters before Ms. Calloway took disability leave for mental-health problems in mid-2007. She alleges that Mr. Dibell sexually harassed her during this on-again-off-again period, in that he pressured her to

renew their affair and became critical and caustic when she resisted his advances. Within this same time-frame, she received pay increases and a promotion.

Ms. Calloway confided her relationship problems with Mr. Dibell to her friend Kathy Ova, an Aerojet contract specialist, who may have been referred to as a manager in some contexts.[1] Ms. Calloway was seeking personal advice, and did not believe it was Ms. Ova's "responsibility to report [the] harassment." Aplt. App., Vol. 1 at 68. For her part, Ms. Ova felt that "Ms. Calloway was just generally complaining that she did not like to get up in the morning and come to work." *Id.*, Vol. II at 298. Ms. Ova did not consider herself an Aerojet manager and, in any event, did not relay the conversations to a human-resource representative.

---

[1] Ms. Calloway has provided unauthenticated evidence of a business card and reports to an outside organization referring to Ms. Ova as a subcontracts manager. On company records, Ms. Ova is listed as a "Senior Subcontract Administrator" or "Procurement Subcontracts Specialist." She supervised no employees and had no human-resources responsibilities. The district court determined that, as a matter of law, Ms. Ova was not a manager for purposes of Aerojet's sexual-harassment policy. *See Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1033 (7th Cir. 1998) (distinguishing between employees "who are supervisors merely as a function of nomenclature from those who are entrusted with actual supervisory powers" in determining Title VII liability). Because we rely on other grounds to decide that Ms. Calloway's conversations with Ms. Ova had no effect on Aerojet's entitlement to the *Ellerth/Faragher* affirmative defense, we do not analyze this aspect of the district court's ruling. We may affirm the district court's grant of summary judgment on any ground supported by the record. *See Bolden v. PRC Inc.*, 43 F.3d 545, 548 (10th Cir. 1994).

Ms. Calloway herself never reported harassment through Aerojet's complaint process or by direct contact with the officials who had interviewed her. In fact, Aerojet officials were not notified of the harassment allegations until Ms. Calloway was on short-term disability leave and her husband telephoned their corporate office to complain that Mr. Dibell had sexually harassed his wife.

Aerojet promptly launched another investigation, which led to Mr. Dibell's retirement in lieu of termination. Ms. Calloway did not return to the workforce. Her short-term disability was converted to long-term leave, then she began receiving Social Security insurance disability benefits.

Ms. Calloway sued Aerojet, alleging that she had been sexually harassed by Mr. Dibell. Aerojet moved for summary judgment based on the *Ellerth/Faragher* affirmative defense, which may be available to employers in instances in which the employee allegedly "refuses the unwelcome and threatening sexual advances of a supervisor, yet suffers no adverse, tangible job consequences." *Ellerth*, 524 U.S. at 747; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). The district court concluded that Aerojet had established its entitlement to the defense and therefore entered summary judgment on Ms. Calloway's claims. Ms. Calloway now appeals.

II.

We review the district court's grant of summary judgment de novo. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011).

Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although courts may not make credibility determinations or weigh evidence at the summary judgment stage, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations omitted).

The purpose of the *Ellerth/Faragher* defense is "to recognize the employer's affirmative obligation to prevent violations and give credit . . . to employers who make reasonable efforts to discharge their duty." *Faragher*, 524 U.S. at 806. It also acknowledges that the employee has "a coordinate duty to avoid or mitigate harm" by "avail[ing] herself of the employer's preventive or remedial apparatus." *Id.* at 806-07. Under *Ellerth/Faragher*, the employer must prove by a preponderance of the evidence both that "(1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1058-59 (10th Cir. 2009) (citing *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807) (quotations omitted).

Ms. Calloway does not contest Aerojet's reasonable care to prevent sexual harassment. It "had in place an adequate sexual harassment policy" that

-6-

"prohibits sexual harassment, identifies the complaint procedure, and informs employees that disciplinary action might be taken against those who violate the policy." *Pinkerton*, 563 F.3d at 1062. Aerojet's policy committed "to promptly and thoroughly investigate all reports of" harassing conduct. Aplt. App., Vol. 2 at 258. An employee was to "immediately notify . . . [a] Human Resources Representative, your designated facility ethics officer, or a Company attorney" or use the "Compliance Hotline." *Id.* "These are the individuals who are authorized to receive and act upon complaints of harassment or discrimination." *Id.*

"However, the existence of a sexual harassment policy and training alone does not satisfy the employer's burden under the first prong of the *Ellerth/Faragher* defense because the employer not only must take reasonable care to prevent sexually harassing behavior but also to correct promptly any such behavior." *Pinkerton*, 563 F.3d at 1062. Ms. Calloway claims a disputed issue of fact about the promptness of Aerojet's actions by calling attention to a policy provision that requires "[a]ny manager or supervisor" who becomes aware of possible sexual harassment "to report immediately to . . . [a] Human Resources Representative." Aplt. App., Vol. 2 at 258. Under this provision, she argues, once "any Aerojet manager or supervisor" learns of problematic conduct, the company is immediately on notice of harassment. And the timing of its first notice "is of paramount importance [in applying the *Ellerth/Faragher defense* because] if [it] had notice of the harassment . . . then it is liable unless it took prompt corrective

action." *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1299 (11th Cir. 2000) (quotation omitted).

Ms. Calloway asserts that, by submitting evidence showing references to Ms. Ova as a manager, she has raised a disputed issue of fact on the promptness of Aerojet's actions. In her view, her confidences to Ms. Ova put Aerojet on notice of sexual harassment and obligated it to launch an immediate inquiry into her change of heart about Mr. Dibell. And Aerojet did not investigate the situation until it received the telephone call from her husband.

The First Circuit has considered analogous circumstances and decided the question of "whether the company's voluntary adoption of a policy requiring all supervisors . . . to report sexual harassment increases the scope of the company's legal liability as a matter of law under Title VII." *Chaloult v. Interstate Brands Corp.*, 540 F.3d 64, 76 (1st Cir. 2008). Its emphatic answer: "[w]e think not." *Id.* In reaching this conclusion, the court recognized the existence of a contrary case, which held that a corporation's policy requiring "*all* supervisors and managers to report incidents of sexual harassment" meant that a supervisor's awareness constituted notice to the employer. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 350 (6th Cir. 2005) (alteration and quotation omitted). The First Circuit, however, determined that "[a]doption of [the *Clark*] view would set a legal standard different from the Supreme Court's reasonableness approach" in *Ellerth*/*Faragher* and "also discourage and penalize voluntary efforts which go

-8-

beyond what the law requires." *Chaloult*, 540 F.3d at 76. It would lead to "undercut[ting] the policy judgment the Supreme Court made" in *Ellerth/Faragher*. *Id.*

"Given the combination of factors from the events in this case," *id.* at 75, we determine that *Chaloult* provides the better approach to our analysis of Ms. Calloway's argument. The relevant question is not whether Ms. Ova was a manager but whether Aerojet acted reasonably in correcting any harassing behavior. Thus, a dispute over Ms. Ova's title does not raise an issue of material fact precluding summary judgment based on the *Ellerth/Faragher* defense. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1361 (10th Cir. 1993) ("Factual disputes about immaterial matters are irrelevant to a summary judgment determination.").

The uncontested material facts demonstrate that Aerojet exercised reasonable care in addressing Mr. Dibell's conduct. Its swift reaction to earlier allegations about his inappropriate relationship with Ms. Calloway included a training session and a series of personal interviews. This initial investigation was thwarted by Ms. Calloway's own false statements. But as soon as her husband complained through the company process, Aerojet began another investigation and eventually disciplined Mr. Dibell. Further, "the context surrounding [Ms. Calloway's] comments to [Ms. Ova] compels the conclusion that [she] could not reasonably have been expected to act to address [Ms. Calloway's] complaints." *Madray*, 208 F.3d at 1300.

In sum, Aerojet met its burden of proof on the first element of the *Ellerth/Faragher* defense. And because Ms. Calloway admits that she unreasonably failed to take advantage of the company's preventive and corrective opportunities, Aerojet satisfied the second element as well. Accordingly, we affirm the district court's entry of summary judgment.

III.

Aerojet's appellate brief includes a request for an award of attorneys' fees on appeal. Rule 38 of the Federal Rules of Appellate Procedures provides for an award of fees "[i]f a court of appeals determines that an appeal is frivolous" and the appellee submits "a separately filed motion" or this court issues a notice. "An appeal is frivolous when the result is obvious, or the appellant's arguments of error are wholly without merit." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (en banc) (quotation omitted). Aerojet's request satisfies neither the procedural or substantive requirements of Rule 38.

AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge