PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HORACE GARY WADE, JR.; SAMUEL
MITCHELL BECK; MICHAEL WAYNE
HARRIS; GENEVA GEORGE GUNTON;
DAVID TRENT TROXEL; FRED CALVIN
GEORGE; MARCUS E. SANDERS;
DEBORAH HARRIS CRISCO; E. FRED
SANDERS; HEYWARD JACKSON CANTY,
JR.; RODERICK NEIL BECK; F.
WILLIAM HARRIS; THOMAS W.
TRIMINAL; CLAIRE SANDERS WILSON,
Individually and ex rel. the Catawba
Indian Nation,

*Plaintiffs-Appellees,*

and

BRANDY HARRIS WILSON; BOB
TRIMINAL,

*Plaintiffs,*

v.

GILBERT BLUE; EVANS M. GEORGE;
CARSON T. BLUE; CLAUDE AYERS;
DEWEY ADAMS; WANDA GEORGE
WARREN,

*Defendants-Appellants,*

and

No. 03-2245

FOXX E. AYERS; SPECIAL PROPERTIES
MANAGEMENT, INCORPORATED,
                              *Defendants.*

WILLIAM C. BOYD; UNITED STATES OF
AMERICA,
                              *Parties in Interest.*

SECRETARY OF THE INTERIOR,
                              *Movant.*

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Julian Abele Cook, Jr., Senior District Judge, sitting by designation.
(CA-98-2584-0-17)

Argued: February 26, 2004

Decided: May 26, 2004

Before WILKINSON and KING, Circuit Judges,
and William D. QUARLES, Jr., United States District Judge for the
District of Maryland, sitting by designation.

Reversed and remanded by published opinion. Judge Wilkinson wrote
the opinion, in which Judge King and Judge Quarles joined.

**COUNSEL**

**ARGUED:** Jerry Jay Bender, BAKER, RAVENEL & BENDER,
L.L.P., Columbia, South Carolina, for Appellants. James Donovan
Mosteller, III, THE MOSTELLER LAW FIRM, L.L.C., Barnwell,
South Carolina, for Appellees. **ON BRIEF:** Robert Jones, Rock Hill,
South Carolina, for Appellants.

**OPINION**

WILKINSON, Circuit Judge:

This case arises out of a governance dispute between members of the Catawba Indian Tribe of South Carolina. Plaintiffs, individual members of the Tribe, filed suit in federal court against defendants, who are also members of the Tribe and who control the Tribe's Executive Committee. The essence of plaintiffs' complaint was that defendants had exerted improper control over the Tribe's assets and other affairs. Defendants filed a motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, but the district court denied the motion. Because we find that the South Carolina state courts possess exclusive jurisdiction over this intra-tribal dispute, we reverse that judgment.

I.

During the 1980s and early 1990s, the Catawba Indian Tribe was involved in land-related lawsuits against the United States and the State of South Carolina. *See generally* 25 U.S.C. § 941(a)(4) (2001) (describing the historical background of the Tribe and its land claims against the United States and South Carolina). However, in 1993 the Tribe ended this extended litigation by entering into a Settlement Agreement with the United States and South Carolina. The Settlement Agreement was implemented through both federal and state legislation. *See* 25 U.S.C. § 941 ("Federal Act"); S.C. Code Ann. § 27-16-20 (2003) ("State Act"). Pursuant to the Federal Act, the Settlement Agreement and the State Act "shall be complied with in the same manner and to the same extent as if they had been enacted into Federal law." 25 U.S.C. § 941b(a)(2).

As part of the settlement, the federal and state governments were to pay a total of $50 million in trust to the Tribe, in return for extinguishment of past and future land claims. *See id.* §§ 941c(a), 941d; S.C. Code Ann. §§ 27-16-50(A), 27-16-60. The Settlement Agreement and its implementing statutes also established certain requirements for the Tribe and its leadership, such as requiring the Tribe to adopt a new constitution, *see* 25 U.S.C. § 941f(a); to submit a base membership roll to the Secretary of the Interior, *see id.* § 941e; and

to conduct elections, *see id.* § 941g(d). Furthermore, the Settlement Agreement and its implementing legislation provided a transitional governing structure for the Tribe until a new tribal constitution could be passed. *See, e.g.*, *id.* § 941f. Most relevant for this case, § 12.7 of the Settlement Agreement recognized the Tribe's authority to create its own Tribal court, but it provided in the interim that if no Tribal court is created, "the State [of South Carolina] shall exercise jurisdiction over all civil and criminal causes arising out of acts and transactions occurring on the Reservation or involving members of the Tribe." *See also* S.C. Code Ann. § 27-16-80(H) (codifying identical language).

Plaintiffs are fourteen individual members of the Tribe and of the Tribe's General Council. The General Council consists of all members of the Tribe qualified to vote, and one of its responsibilities is to elect the officers of the Executive Committee. Defendants are five members of the Tribe who serve on the Executive Committee, and a sixth member who is the Executive Director and Chief Financial Officer of the Tribe. According to plaintiffs, the Executive Committee is charged with handling the day-to day matters for the Tribe, in addition to other matters that the General Council may delegate to it.

Following the 1993 Settlement Agreement, plaintiffs and defendants became embroiled in a dispute over the governance of the Tribe and its assets. Plaintiffs claim that defendants have exercised unauthorized control over the Tribe's affairs and have violated provisions of the Settlement Agreement and the Federal and State Acts. For example, plaintiffs allege that defendants have failed to hold meetings; to provide mandatory accountings of the Tribe's income, property, and government-disbursed trust funds; to submit a membership roll; and to promulgate a new constitution. In addition, defendants allegedly failed to hold elections after their terms expired, refused to acknowledge the results of two 2002 elections by a quorum of the General Council, and accepted salaries and other benefits without approval by the General Council.

Based on these allegations, plaintiffs filed suit in federal court. They now seek to obtain a declaratory judgment that defendants are without any power to lead the Tribe; an accounting of all of the Tribe's funds and expenditures from 1993 to the present; and dam-

ages from the defendants' alleged breach of contract by violating numerous provisions of the Settlement Agreement. Ultimately, plaintiffs wish to have the defendants removed from power and to have other individuals — those allegedly elected by a quorum of the General Council in 2002 — named as the new officers of the Executive Committee.

In their second amended complaint, plaintiffs asserted jurisdiction "pursuant to 28 U.S.C. § 1331, Rules 57 and 65 F.R.C.P., 25 U.S.C. § 941 et seq., and [28] U.S.C. § 2201." Defendants filed a Rule 12(b)(1) motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. In the alternative, defendants filed a Rule 12(b)(6) motion to dismiss plaintiffs' breach of contract claim because the Tribal Constitution does not constitute an enforceable contract between the Tribe and its members. The district court granted the motion to dismiss plaintiffs' breach of contract claim, but it denied the Rule 12(b)(1) motion to dismiss the complaint for lack of jurisdiction. The court found that plaintiffs' claims, as they required interpretation of the Federal Act, were predicated on the court's federal question jurisdiction under 28 U.S.C. § 1331. Defendants now appeal this jurisdictional ruling.[1]

---

[1]Although neither party contests the issue, we note that we have jurisdiction to hear this appeal under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Congress ratified the sovereign Tribe's decision to have exclusive state court jurisdiction over intra-tribal suits like this one until the Tribe establishes its own court system. The question of whether there is federal jurisdiction over this suit is independent of the merits of plaintiffs' claims, and the district court has resolved the issue in favor of federal jurisdiction after full consideration. Were we to deny review and thus force the members of the Tribe to litigate their claims in federal court, we would irreparably deprive the Tribe of the exclusive state court forum authorized for such disputes. In short, the entire benefit of the Tribe's bargain in the Settlement Agreement and its implementing statutes would be lost. The importance of granting review at this time is clear in light of the significant federal policy of Indian self-determination and tribal autonomy, which the Supreme Court has held is undermined by forcing tribes into foreign forums other than the ones they have selected through the exercise of their sovereignty. *See, e.g.*, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59-60 (1978); *see also Crowe v. E. Bank of Cherokee Indians, Inc.*, 584 F.2d 45, 45-46 (4th Cir. 1978) (following *Martinez*).

## II.

Defendants contend that the Settlement Agreement and its implementing statutes confer exclusive jurisdiction on the South Carolina state courts to resolve intra-tribal disputes such as the present one. Thus they claim that the district court erred in accepting jurisdiction over plaintiffs' complaint.

It is a fundamental precept of our constitutional structure that Congress may, in its discretion, grant, withhold, or otherwise limit the jurisdiction of the lower federal courts. *See Palmore v. United States*, 411 U.S. 389, 400-02 (1973); *Lockerty v. Phillips*, 319 U.S. 182, 187-88 (1943). A corollary to this rule is that Congress may, by exercising its constitutional prerogative to withhold federal court jurisdiction over a particular claim, confer exclusive jurisdiction upon state courts to enforce federal law. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 n.4 (1981); *see also Int'l Science & Tech. Inst., Inc. v. Inacom Communciations, Inc.*, 106 F.3d 1146, 1158 (4th Cir. 1997) (enforcing Congress's grant of exclusive state court jurisdiction over a federal right of action). Indeed, under our system of federalism, state courts of general jurisdiction are presumed to have jurisdiction to enforce federal law unless Congress directs otherwise, and these courts are surely competent to handle such claims. *See Tafflin v. Levitt*, 493 U.S. 455, 458-59 (1990); *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 507-08 (1962); *Claflin v. Houseman*, 93 U.S. 130, 136-37 (1876). Congress's authority to create exclusive state court jurisdiction over tribal matters therefore cannot be doubted.

The only question we must decide, then, is whether the Settlement Agreement and the Federal and State Acts provide for exclusive state court jurisdiction over plaintiffs' intra-tribal dispute.[2] Section 12.7 of the Settlement Agreement provides:

---

[2]Because we find that suits such as the present one are cognizable only in South Carolina state courts pursuant to the Settlement Agreement and its implementing legislation, we need not address the district court's finding that there is federal question jurisdiction under 28 U.S.C. § 1331. As we ruled in *Inacom Communications*, 106 F.3d at 1154-55, a specific limitation on federal court jurisdiction, such as we confront here, overrides the general grant of federal jurisdiction in § 1331.

> If no Tribal Court is established by the Tribe, the State *shall* exercise jurisdiction over *all* civil and criminal causes arising out of acts and transactions occurring on the Reservation or involving members of the Tribe. . . .

(Emphasis added.) The State Act contains an identical provision, vesting jurisdiction in the South Carolina state courts for "all civil and criminal causes" involving Tribe members. *See* S.C. Code Ann. § 27-16-80(H).

Moreover, Congress ratified this selection of a state forum in the Federal Act:

> In the administration of this subchapter:
>
> > (1) All matters involving tribal powers, immunities, and jurisdiction, whether criminal, civil, or regulatory, shall be governed by the terms and provisions of the Settlement Agreement and the State Act, unless otherwise provided in this subchapter.

25 U.S.C. § 941h(1). Congress likewise provided that "all matters pertaining to governance . . . of the reservation . . . shall be governed by the terms and provisions of the Settlement Agreement and the State Act." *Id.* § 941h(2). And, as noted above, Congress mandated in § 941b(a)(2) that the Settlement Agreement and the State Act "are approved, ratified, and confirmed by the United States" and must be treated as if they were enacted as federal law.

Taken together, these provisions permit but one conclusion: the Tribe determined, and Congress and the South Carolina legislature agreed, that *all* civil matters involving the Tribe's members are to be brought in state courts where, as here, no Tribal court is established. And this interpretation is confirmed by the context in which the provision for mandatory state court jurisdiction in § 27-16-80(H) arises. Section 27-16-70 of the State Act provides that the Tribe may create a Tribal court with criminal jurisdiction over its reservation and its members. *See* S.C. Code Ann. § 27-16-70(B). If created, the Tribal criminal court is permitted to have concurrent jurisdiction with the

state courts over state criminal laws, and exclusive jurisdiction over tribal laws. *See id.* § 27-16-70(B)(2). Section 27-16-80 then provides that the Tribe may create a Tribal court with civil jurisdiction over certain types of claims. *See id.* § 27-16-80(A). For example, the State Act allows the Tribal court to have concurrent jurisdiction over some types of contract and tort claims involving the Tribe, its members, and activities on its reservation. *See id.* §§ 27-16-80(A)(1), (A)(2), and (B). And, most relevant for this case, the statute allows the Tribal court to be vested with jurisdiction "over internal matters of the Tribe," a jurisdiction which "*must* be exclusive." *Id.* §§ 27-16-80(A)(3) and (B) (emphasis added).

These elaborate provisions for the jurisdiction of the Tribal court are followed, in § 27-16-80(H), by a general, stop-gap declaration that "if no Tribal Court is established by the Tribe, the State shall exercise jurisdiction over all civil and criminal causes arising out of acts and transactions occurring on the Reservation or involving members of the Tribe." This provision refers back to both § 27-16-70 and § 27-16-80, making clear that until a Tribal court can be created with criminal and civil jurisdiction, the interim arrangement is for the state courts to handle "all civil and criminal" claims.

Viewed in this context, it is apparent that the Tribe intended to grant exclusive state court jurisdiction as a simple, transitional provision, until it could create a Tribal court. And it is revealing that the type of claim involved here — a quintessentially internal matter dealing with the governance of the Tribe — would be handled exclusively in Tribal court if such a court were established. *See id.* § 27-16-30(8) (defining "Internal Matters" as including, *inter alia*, "the relationship between the Tribe and one or more of its members [and] the conduct of Tribal government over members of the Tribe"). There is simply no role granted to the federal courts to adjudicate internal tribal matters, whether or not the Tribe has created its own court to handle such claims.

Plaintiffs protest, however, that § 27-16-80(H) of the State Act is merely a waiver of the Tribe's sovereign immunity in South Carolina courts, rather than an exclusive grant of jurisdiction to the state courts. To begin with, § 27-16-80(H) does not even speak in terms of sovereign immunity. It does not address simply those claims against

the Tribe as sovereign, but rather all "causes arising out of acts and transactions occurring on the Reservation or involving members of the Tribe." S.C. Code Ann. § 27-16-80(H). Moreover, plaintiffs' contention ignores entirely that a separate provision of the State Act details at length under which circumstances the Tribe waives its sovereign immunity. *See id.* § 27-16-80(F). Section 27-16-80(H) thus cannot be construed as a waiver of all sovereign immunity, without reading the more particularized waiver of immunity in § 27-16-80(F) out of the statute or bringing the two provisions into irreconcilable conflict.

We therefore conclude that the Settlement Agreement and its implementing legislation provide for exclusive state court jurisdiction over plaintiffs' claims. We cannot fail to enforce the Tribe's choice of a state forum without ignoring Congress's mandate and without undermining the substantial federal policy of promoting Indian self-government and tribal sovereignty. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59-60 (1978). The selection of a judicial forum to handle intra-tribal disputes under § 12.7 of the Settlement Agreement and its implementing legislation can only be viewed as an exercise of the Tribe's sovereign power, pursuant to this federal policy. We are accordingly obliged to give effect to the Tribe's determination as ratified by Congress.

### III.

For the foregoing reasons, the judgment of the district court is reversed and remanded with instructions to dismiss the complaint for want of jurisdiction.

*REVERSED AND REMANDED*