FILED
United States Court of Appeals
Tenth Circuit

August 1, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ERNEST JOHN MCKENZIE, M.D.,

Petitioner-Appellant,

v.

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,
DISTRICT DIRECTOR,

Respondent-Appellee.

No. 13-6020

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:11-CV-01106-M)**

Michelle L. Edstrom of the Law Office of Michelle L. Edstrom, Oklahoma City,
Oklahoma, for Petitioner-Appellant.

Jeffrey S. Robins, Assistant Director, Office of Immigration Litigation, District Court
Section, U.S. Department of Justice, Civil Division (Stuart F. Delery, Acting
Assistant Attorney General, Civil Division, and David J. Kline, Director, Office of
Immigration Litigation, District Court Section, with him on the brief), Washington,
D.C., for Respondent-Appellee.

Before **HARTZ**, **HOLLOWAY**,[*] and **HOLMES**, Circuit Judges.

---

[*]     The late Honorable William J. Holloway, Jr., United States Senior Circuit
Judge, heard oral argument but passed away prior to final resolution of the appeal.
"The practice of this court permits the remaining two panel judges if in agreement to
act as a quorum in resolving the appeal." *United States v. Wiles*, 106 F.3d 1516,
1516 n.* (10th Cir. 1997); *see also* 28 U.S.C. § 46(d) ("A majority of the number of

(continued)

**HARTZ**, Circuit Judge.

For much of his life, Ernest John McKenzie's Canadian birth certificate listed the wrong birth date.  Because he used that birth certificate to become a naturalized United States citizen, his United States Certificate of Naturalization also listed the wrong birth date.  After he was naturalized, he got his birth certificate corrected; now his problem is getting his naturalization certificate amended so that his paperwork is all in accord.  Relying on 8 C.F.R. § 334.16(b) (2011) to establish the district court's jurisdiction, he filed this action requesting that the district court order United States Citizenship and Immigration Services (USCIS) to issue a naturalization certificate with his correct date of birth.  The request seems fair and simple enough, but we cannot help him.  With limited exceptions not applicable here, Congress has withdrawn jurisdiction over naturalizations from the district courts.  In addition, the district court lacked jurisdiction because Dr. McKenzie's invocation of § 334.16(b) is not a colorable claim.  We therefore affirm the district court's dismissal of this action under Fed. R. Civ. P. 12(b)(1).

judges authorized to constitute a court or panel thereof . . . shall constitute a quorum.").  The remaining panel members have acted as a quorum with respect to this opinion and no judge of this Court has objected to publication.

# I. Legal Background

Before passage of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (the Immigration Act or the Act), the federal district courts had jurisdiction to naturalize a person as a citizen of the United States. *See* 8 U.S.C. § 1421(a) (1990). The district courts also had jurisdiction to revoke their orders granting citizenship and to cancel certificates of naturalization on limited grounds. *See id.* § 1451 (1990). A subsection of the revocation statute recognized that courts could exercise authority otherwise granted them (such as by Fed. R. Civ. P. 60) to correct or modify their judgments granting naturalization:

> Nothing contained in this section shall be regarded as limiting, denying, or restricting the power of any naturalization court, by or in which a person has been naturalized, to correct, reopen, alter, modify, or vacate its judgment or decree naturalizing such person . . . within the time prescribed by the rules of procedure or statutes governing the jurisdiction of the court to take such action.

*Id.* § 1451(i) (1990). This judicial authority presumably would have to be derivative of the power conferred by § 1421 to issue the judgment or decree in the first place. In furtherance of the statutory scheme, 8 C.F.R. § 334.16(b) (1990) provided that the Immigration and Naturalization Service would receive notice of judicial proceedings to revise naturalization papers:

> Whenever an application is made to the court to amend a petition or application for naturalization after final action thereon has been taken by the court, a copy of the application shall be served upon the district director having administrative jurisdiction over the territory in which the court is located, in the manner and within the time provided by the rules of court in which application is made. No objection shall be made to the amendment of a petition for naturalization after the petitioner for

- 3 -

naturalization has been admitted to citizenship if the motion or application is to correct a clerical error arising from oversight or omission. A representative of the Service may appear at the hearing upon such application and be heard in favor of or in opposition thereto. When the court orders the petition amended, the clerk of court shall transmit a copy of the order to the district director for inclusion in the Service file.

The Immigration Act, however, amended § 1421(a) to transfer authority over naturalization from the judiciary to the Attorney General. *See* Immigration Act, Title IV, sec. 401(a), § 310(a), 104 Stat. at 5038. Through delegation, the Attorney General's authority over naturalization now is exercised by USCIS. *See* 8 C.F.R. §§ 2.1, 310.1(b); 6 U.S.C. § 271(b)(2). The Act declares that "[n]o court shall have jurisdiction, under [repealed § 1421(a)], to naturalize a person unless a petition for naturalization with respect to that person has been filed with the court before October 1, 1991." Immigration Act, Title IV, § 408(a)(1), 104 Stat. at 5047; *see also* 8 C.F.R. § 310.4. The limited federal judicial power under § 1451 to revoke and cancel naturalization is retained under the Act. But § 1451(i) (now § 1451(h)) was amended to state that the section does not limit the power of the Attorney General (rather than the courts) "to correct, reopen, alter, modify, or vacate an order naturalizing the person." Immigration Act, Title IV, § 407(d)(18)(D), 104 Stat. at 5046.

Despite the statutory change, the only amendment (probably just a nomenclature correction) to 8 C.F.R. § 334.16(b), the regulation addressing judicial modifications to petitions for naturalization, was to replace the references to "a petition or application for naturalization" by "a petition for naturalization."

- 4 -

Administrative Naturalization, 56 Fed. Reg. 50475, 50496 (Oct. 7, 1991). The regulation remained in place for another two decades (presumably because there might still be cases where persons naturalized in federal court would seek to amend their naturalization documents) until it was repealed effective November 28, 2011, *see* Immigration Benefits Business Transformation, Increment I, 76 Fed. Reg. 53764, 53764, 53801 (Aug. 29, 2011), after Dr. McKenzie filed this action. As for administrative relief, 8 C.F.R. § 338.5 permits corrections for clerical errors.[1]

## II. Factual and Procedural Background

Dr. McKenzie became aware as an adult that his original Canadian birth certificate listed the date of his baptism as the date of his birth. Initially, Canada was averse to correcting the birth certificate because his baptismal records had been destroyed in a fire. When Dr. McKenzie applied for naturalization as a United States citizen, he had only his original birth certificate. Therefore, his United States Certificate of Naturalization, issued by the Commissioner of Immigration and Naturalization in February 2004, reflected the incorrect birth date. In 2008, Canada corrected his birth certificate to reflect his true date of birth.

In January 2011, relying on his corrected Canadian birth certificate, Dr. McKenzie filed with USCIS a Form N-565 application for a replacement

---

[1]     Section 338.5(a) provides: "Whenever a Certificate of Naturalization has been delivered which does not conform to the facts shown on the application for naturalization, or a clerical error was made in preparing the certificate, an application for issuance of a corrected certificate may be filed, without fee, in accordance with the form instructions."

naturalization certificate.  USCIS denied the application.  Citing 8 C.F.R. § 338.5(e), which provides that a "correction will not be deemed to be justified where the naturalized person later alleges that the . . . date of birth which the applicant stated to be his . . . correct . . . date of birth at the time of naturalization was not in fact his . . . date of birth," USCIS stated that it had "no authority to issue a replacement certificate for a date of birth that was established at the time of naturalization," Aplt. App. at 26.

On September 30, 2011, Dr. McKenzie filed in the district court his Petition to Amend Certificate of Naturalization.  He recognized that the regulations permitted USCIS to amend naturalization certificates only in cases of clerical error, but he argued that 8 C.F.R. § 334.16(b) (2011) gave broader power to courts by providing that "a federal court with jurisdiction over the applicant's naturalization proceeding has the authority to order that an amendment be made to the applicant's Certificate of Naturalization."  Aplt. App. at 5.

USCIS moved to dismiss the petition under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, arguing that § 334.16(b), as a regulation, could not by itself confer subject-matter jurisdiction on the district court.  Alternatively, it moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  It argued that § 334.16(b) applied only to judicial naturalizations, not naturalizations like Dr. McKenzie's that occurred after the Immigration Act's changes to the naturalization process; and it said that Dr. McKenzie could not rely on the

Administrative Procedure Act (APA) for review of USCIS's denial of relief under 8 C.F.R. § 338.5 because that regulation permits only corrections of clerical errors. (In response, Dr. McKenzie disclaimed any intent to proceed under the APA.)

Agreeing with USCIS, the district court dismissed the case. It held (1) that "§ 334.16(b) alone can not confer subject matter jurisdiction on this Court," Aplt. App. at 59; and (2) that even if § 334.16(b) could confer subject-matter jurisdiction, it did not apply to naturalizations that occurred after naturalization authority was transferred to the Attorney General. Dr. McKenzie now appeals to this court.

### III. Analysis

We review a Rule 12(b)(1) dismissal de novo. *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008). "Because the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." *Id.* (internal quotation marks omitted).

Before the district court, Dr. McKenzie rested his claim of subject-matter jurisdiction solely on § 334.16(b) and 28 U.S.C. § 1331 (granting federal-question jurisdiction). On appeal, however, he argues that there are two additional bases for his claim. His opening brief not only cites § 334.16(b), but also urges us to conclude that there is "general federal question jurisdiction" because the Constitution delegates authority over naturalization to the federal government. Aplt. Opening Br. at 15-17. And in his reply brief, analogizing to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (recognizing nonstatutory claims

- 7 -

against federal officers for violating the Constitution), he further suggests that this court should create a remedy under "federal common law" or "federal principles of equity." Aplt. Reply Br. at 5. These arguments come too late. Ordinarily we do not entertain arguments that are not raised before the district court, *see Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc.*, 413 F.3d 1163, 1167 (10th Cir. 2005), or that are raised for the first time in a reply brief, *see Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011). Seeing no extraordinary reason to depart from these general rules in this appeal, we limit our analysis to whether Dr. McKenzie can proceed under § 334.16(b). To be sure, arguments that the court *lacks* jurisdiction can be raised at any time. But that is because a court without jurisdiction has no authority to decide an issue on the merits. In contrast, when a party presents an unpreserved argument *against* dismissal for lack of jurisdiction, we do not exceed our power by declining to consider the argument. *See United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 n.2 (10th Cir. 1996) ("Our duty to consider unargued *obstacles* to subject matter jurisdiction does not affect our discretion to decline to consider waived arguments that might have *supported* such jurisdiction."); *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992) ("[O]ur responsibility to ensure even sua sponte that we have subject matter jurisdiction before considering a case differs from our discretion to eschew untimely raised legal

theories which may support that jurisdiction. We have no duty under the general waiver rule to consider the latter." (citation omitted)).[2]

## A.    Statutory Withdrawal of Jurisdiction From District Courts

Dr. McKenzie is not a petitioner who was naturalized by the district court and seeks an amendment of the court order. His naturalization was handled start-to-finish by USCIS, long after Congress transferred naturalization authority from the judiciary. In these circumstances, the district court has no jurisdiction to order the correction of Dr. McKenzie's naturalization certificate. We are not persuaded by his arguments based on 28 U.S.C. § 1331 and 8 C.F.R. § 334.16(b).

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). We assume that a federal regulation qualifies as a law of the United States for purposes of § 1331. *See Chasse v. Chasen*, 595 F.2d 59, 61 (1st Cir. 1979) ("It is beyond dispute that validly issued administrative regulations . . . may be treated as 'laws of the United States' under § 1331(a)."). We also assume (although the next section of this opinion will show

---

[2]    We note that Dr. McKenzie cites a case, *Sharma v. United States Citizenship & Immigration Services*, No. CV 11-1984-PHX-FJM (D. Ariz. Sept. 19, 2012) (unpublished order), which held that the court had jurisdiction under 28 U.S.C. §§ 1346(a) and 1361. But he makes no argument why those statutes would confer jurisdiction here and we offer no opinion on the matter.

that the assumption is false) that Dr. McKenzie has a colorable claim arising under 8 C.F.R. § 334.16(b).

Nevertheless, "[t]his general grant of federal question jurisdiction [under § 1331] is not limitless—Congress may negate district court jurisdiction by virtue of a specific reference or assignment." *United States v. Alisal Water Corp.*, 431 F.3d 643, 650 (9th Cir. 2005) (alterations and internal quotation marks omitted); *see also K Mart Corp.*, 485 U.S. at 182-83 (district court would be divested of jurisdiction under § 1331 if matter fell within provisions granting exclusive jurisdiction to the Court of International Trade); *Califano v. Sanders*, 430 U.S. 99, 105 (1977) (§ 1331 is "subject . . . to preclusion-of-review statutes created or retained by Congress"). And "[i]t is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (internal quotation marks omitted). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *Id.* Accordingly, "a specific limitation on federal court jurisdiction . . . overrides the general grant of federal jurisdiction in § 1331." *Wade v. Blue*, 369 F.3d 407, 411 n.2 (4th Cir. 2004). It therefore is not appropriate for the district court to exercise jurisdiction under § 1331 where, as here, Congress has explicitly withheld federal-court jurisdiction over the specific subject of the litigation.

- 10 -

The Immigration Act provides that "[n]o court shall have jurisdiction, under [repealed § 1421(a)], to naturalize a person unless a petition for naturalization with respect to that person has been filed with the court before October 1, 1991." Immigration Act, Title IV, § 408(a)(1), 104 Stat. at 5047. The Act transferred that naturalization authority to the Attorney General. The federal courts maintained their limited authority to revoke and cancel naturalizations under § 1451.[3] But the predicate for their authority to correct or modify naturalization documents was eliminated by the removal of jurisdiction to enter naturalization judgments (except, of course, for those persons who had filed for naturalization before October 1, 1991). Hence, § 1451(i) was amended to provide that nothing in that section should be read to limit the *Attorney General*'s power, rather than the *court*'s power, to correct or modify a naturalization certificate. *See* Immigration Act, Title IV, § 407(d)(18)(D), 104 Stat. at 5046. Courts could modify judgments authorized by now-repealed § 1421(a), but there would be no more such judgments entered in the future, after the existing judicial backlog was addressed. In our view, when Congress ended the jurisdiction of district courts to naturalize aliens, it necessarily ended the jurisdiction to exercise powers derivative of the power to naturalize, including the power

---

[3]     The Immigration Act also added new provisions specifically conferring other naturalization powers on the federal courts. *See* 8 U.S.C. § 1421(c) (jurisdiction to review de novo a denial of naturalization); *id.* § 1447(b) (jurisdiction to "determine the matter or remand the matter" when USCIS failed to timely decide a naturalization application).

- 11 -

(recognized in, but not conferred by, § 334.16(b)) to modify naturalization documents.

**B.      No Colorable Claim Under § 334.16(b)**

Moreover, even if the Immigration Act did not foreclose the exercise of jurisdiction under § 1331 in these circumstances, Dr. McKenzie still would face a second jurisdictional hurdle:  jurisdiction under § 1331 exists only where there is a "colorable" claim arising under federal law.  *Arbaugh*, 546 U.S. at 513; *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1240 (10th Cir. 2001).  A claim can be meritless while still being colorable, *see Prairie Band of Potawatomi Indians*, 253 F.3d at 1240 (discussing definitions of *colorable*), but a court may dismiss for lack of subject-matter jurisdiction "when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (internal quotation marks omitted); *see also Duke Power Co. v. Carolina Envt'l Study Grp., Inc.*, 438 U.S. 59, 70 (1978) ("[T]he test is whether the cause of action is *so patently without merit* as to justify the court's dismissal for want of jurisdiction.") (ellipsis and internal quotation marks omitted)).  Because, as we proceed to explain, § 334.16(b) indisputably does not create a cause of action for Dr. McKenzie, this proceeding does not present a colorable claim arising under federal law.

- 12 -

To begin with, this court has stated that the Supreme Court "will rarely recognize an implied private cause of action arising from a mere regulation." *Hanson v. Wyatt*, 552 F.3d 1148, 1157 (10th Cir. 2008) (citing *Alexander v. Sandoval*, 532 U.S. 275 (2001)). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander*, 532 U.S. at 286. "Statutory intent" to create a private remedy "is determinative." *Alexander*, 532 U.S. at 286. "Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87. In short, "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291.

Here, Dr. McKenzie has not identified any statutory text creating the right he claims. When the Immigration Act became effective, the predicate for § 334.16(b) was eliminated. As discussed earlier, Congress spelled out its intent in the Immigration Act: with the exception of petitions then pending in federal court, the executive branch would handle applications for naturalization beginning on October 1, 1991. The amendments to 8 U.S.C. §§ 1421(a) and 1451(i) left the judiciary with no statutorily assigned role to play with regard to modifying naturalization documents for those persons, like Dr. McKenzie, whose naturalization applications were filed and granted after the Immigration Act became effective.

- 13 -

Further, § 334.16(b) does not speak in terms that could create a cause of action. It does not provide that a naturalized person has any rights. It merely states that after an order has been entered in a judicial naturalization proceeding, (1) a copy of any application to amend must be served on the government, (2) the government can participate in the proceeding, and (3) any amendment to the original order must be sent to the government. And it applies only to applications to amend naturalization petitions "after final action thereon has been taken by the court." No district court had taken "final action" on Dr. McKenzie's naturalization application, because it had been handled entirely by USCIS.

Dr. McKenzie seeks support from cases in which district courts proceeded under § 334.16(b) even though naturalization occurred after the transfer of authority to the Attorney General. Primarily he relies on *Hussain v. United States Citizenship & Immigration Services*, 541 F. Supp. 2d 1082 (D. Minn. 2008). *Hussain*, however, never addressed the fact that the petitioner was naturalized by executive action, not by the district court. In the context of the regulation's use of "petition" for naturalization, not "certificate," USCIS "concede[d] . . . that § 334.16(b) implicitly gives the Court the power to order USCIS to issue Hussain an amended certificate of naturalization." *Hussain*, 541 F. Supp. 2d at 1085. The court accepted the concession and did not further analyze the propriety of proceeding under § 334.16(b). *See Hussain*, 541 F. Supp. 2d at 1085. But USCIS has offered no concession regarding § 334.16(b) in this case.

- 14 -

The other § 334.16(b) cases that Dr. McKenzie cites are three unpublished district court cases, *Moissiu v. United States Citizenship & Immigration Services*, No. 2:10-CV-00218-KJD-LRL, 2011 WL 32490 (D. Nev. Jan. 5, 2011); *Binh Quang Le v. United States Citizenship & Immigration Services*, No. C11-01871 HRL, 2011 WL 3678909 (N.D. Cal. Aug. 22, 2011); and *Lashkariani v. United States Citizenship & Immigration Services*, No. 3:11-cv-00733-ECR-WGC, 2012 WL 3615460 (D. Nev. Aug. 21, 2012). We do not consider these decisions persuasive in their application of § 334.16(b). Like *Hussain*, *Moissiu* states without analysis that § 334.16(b) governs. 2011 WL 32490, at *1. *Binh Quang Le* does engage in analysis, 2011 WL 3678909, at *1, but that petitioner was naturalized in 1991— surely he filed his petition before October 1, 1991. And even if he were naturalized administratively, for the reasons stated above we disagree with *Binh Quang Le*'s conclusion that jurisdiction under § 334.16(b) is not foreclosed for post-Immigration Act naturalizations. *Lashkariani* simply relies on *Binh Quang Le* and *Hussain*, as well as *Nguyen v. United States Department of Homeland Security*, No. 1:06-MC-118, 2007 WL 2156649 (N.D.N.Y. July 25, 2007). *See Lashkariani,* 2012 WL 3615460, at *3. But the petitioner in *Nguyen* was naturalized in 1990, before naturalization authority was transferred. *See Nguyen*, 2007 WL 2156649, at *1.

## C.  Request for Alternative Relief

Finally, Dr. McKenzie requests that if he cannot proceed under § 334.16(b), in lieu of affirming we remand with directions for the district court to dismiss with leave to amend his complaint.  At oral argument, however, counsel conceded that Dr. McKenzie never sought leave to amend in the district court, and we generally do not entertain arguments not raised before the district court, *see Rosewood Servs., Inc.*, 413 F.3d at 1167.

## IV.  Conclusion

Because Dr. McKenzie has failed to establish the district court's subject-matter jurisdiction, the judgment of dismissal is affirmed.