**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**May 2, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

MICHAEL S. FREEMAN, II,

    Plaintiff - Appellant,

v.

RAYTHEON TECHNOLOGIES
CORPORATION; U.S. DEPARTMENT
OF DEFENSE; EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION; U.S.
DEPARTMENT OF HEALTH AND
HUMAN SERVICES; LLOYD J.
AUSTIN, III; XAVIER BECERRA,

    Defendants - Appellees.

No. 23-1133
(D.C. No. 1:22-CV-01161-CNS-NRN)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **BACHARACH**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Plaintiff Michael S. Freeman, II, proceeding *pro se*, appeals from a district

court order dismissing his Third Amended Complaint against Raytheon Technologies

Corporation ("Raytheon"), the United States Department of Defense ("DOD") and its

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Secretary Lloyd J. Austin, III, the Equal Employment Opportunity Commission

("EEOC"), and the United States Department of Health and Human Services

("HHS") and its Secretary Xavier Becerra.  Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.[1]

## BACKGROUND[2]

### I.

In February 2021, almost a year into the COVID-19 pandemic, Collins

Aerospace hired Mr. Freeman as a schedule analyst manager.  Collins Aerospace is a

subsidiary of defendant Raytheon, a frequent DOD contractor.  Later that year, the

President issued an executive order instructing all federal agencies to insert a clause

into new government contracts requiring the contracting company to comply with

COVID-19 guidance issued by the federal government.  Around that time, Collins

Aerospace implemented a policy promulgated by Raytheon requiring all employees

to be vaccinated against COVID-19 or apply for an exemption ("Covid Policy").

---

[1] Appellant's *Petition for Initial En Banc Review* was transmitted to all non-recused judges of the court who are in regular active service.  No judge requested that the court be polled on the Appellant's request for initial en banc review.  As a result, Appellant's petition is denied.  The Honorable Timothy M. Tymkovich did not participate in the court's consideration of Appellant's petition.

[2] The following facts are taken from the well-pleaded allegations in Mr. Freeman's complaint.  *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) ("In ruling on a motion to dismiss for failure to state a claim, all well-pleaded *facts*, as distinguished from conclusory allegations, must be taken as true, and the court must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party." (Internal quotation marks and brackets omitted)).

Under the Covid Policy, exempt employees did not have to be vaccinated but were subject to other requirements. Unvaccinated employees had to work primarily from home, test weekly for the virus, provide a negative test within 72 hours of working onsite, and wear a mask while working onsite. Vaccinated employees were not subject to these requirements.

In December 2021, pursuant to a preliminary injunction issued by a federal court, DOD instructed its contracting officers *not* to enforce any COVID-19 clauses that had been inserted into government contracts. Collins Aerospace, however, retained the Covid Policy.

Mr. Freeman has Beta Thalassemia, a genetic blood disorder that causes anemia like symptoms and increases his risk profile with respect to the COVID-19 vaccine. Because of this condition, he opted against the vaccine and requested and received an exemption. He refused to comply with the Covid Policy requirements for unvaccinated employees, however, because he believed the policy was ineffectual and discriminatory towards unvaccinated employees. Mr. Freeman made this complaint to the Collins Aerospace Human Resources department to no avail. And in January 2022, Collins Aerospace fired him for his refusal to comply with the Covid Policy. Mr. Freeman subsequently filed a complaint with the EEOC complaining of discrimination but withdrew the complaint before the EEOC completed its investigation.

**II.**

**A.**

In May 2022 Mr. Freeman filed this action against Raytheon, DOD, HHS, and the EEOC as well as the secretaries of both DOD and HHS in their official capacities. He did not name Collins Aerospace as a defendant. Shortly after the complaint was filed, the district court ordered Mr. Freeman to amend his complaint to comply with Federal Rule of Civil Procedure 8. Mr. Freeman proceeded to amend his complaint several times.

Before this court is the district court's order dismissing Mr. Freeman's Third Amended Complaint with prejudice.[3] The complaint asserted thirteen claims for relief stemming from Mr. Freeman's termination from Collins Aerospace. Several claims were abandoned in the district court and are not at issue on appeal. The claims that Mr. Freeman argues were erroneously dismissed can be categorized into three groups: (1) employment discrimination claims brought under Title VII and 42 U.S.C. § 1981 (claims 1 and 2); (2) constitutional claims for violations of the First, Fourth, and Fifth Amendments (claims 5-7); and (3) claims under the Nuremberg Code and various federal regulations (claims 9, 11, and 13).[4]

---

[3]Throughout this order, we refer to the Third Amended Complaint as simply the complaint.

[4] It is not clear which claims are asserted against which defendants. But given the more fundamental deficiencies in Mr. Freeman's complaint, this lack of specificity does not affect our analysis.

All defendants filed motions to dismiss. Raytheon, in addition to seeking dismissal under Rule 8, argued the employment discrimination claims failed under Rule 12(b)(6) because Raytheon was never Mr. Freeman's employer and could not be held liable for the actions of its subsidiary, Collins Aerospace. The federal defendants sought dismissal of all claims under Rule 12(b)(1), arguing lack of jurisdiction under the theory of sovereign immunity and further argued the constitutional claims failed for lack of governmental action.

On March 23, 2023, the district court, adopting the recommendation of a magistrate judge, dismissed Mr. Freeman's complaint. Although Mr. Freeman had brought his employment claims under Title VII and 42 U.S.C. § 1981, which do not cover disability and genetic information discrimination, the court treated Mr. Freeman's employment discrimination claims as if they had been asserted under the appropriate federal statutes.[5] The court concluded, however, that Mr. Freeman failed to state a claim against Raytheon because his employer was Collins Aerospace, and Mr. Freeman had failed to allege facts that would justify piercing the corporate veil. The court held the employment discrimination claims against DOD were barred by sovereign immunity for the same reason—because DOD was not Mr. Freeman's employer.

---

[5] In the "Claims For Relief" section of the complaint, Mr. Freeman alleges violations of Title VII and § 1981. Scattered throughout the complaint, however, are references to the Americans With Disabilities Act and the Genetic Information Nondiscrimination Act. The complaint did not reference the Rehabilitation Act.

The claims against the EEOC were based on the agency's retroactive ratification of COVID-19 policies that Mr. Freeman views as ineffectual and discriminatory. And the claims against HHS were based on that agency's issuance of allegedly flawed guidance that led to the promulgation of the discriminatory policies responsible for Mr. Freeman's termination. The district court dismissed Mr. Freeman's claims against those agencies for lack of jurisdiction, holding Mr. Freeman had failed to cite any caselaw that would support a waiver of sovereign immunity under the theories of liability set forth in the complaint.

The district court dismissed Mr. Freeman's First, Fourth, and Fifth Amendment claims for failure to allege government action under *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995), explaining that the federal government cannot be held liable for the conduct of a private actor. The court reiterated that Mr. Freeman was not a government employee and noted that, by his own admission, the COVID-19 contractual provision that had been inserted into government contracts was not operable at the time of his termination. Finally, the court dismissed Mr. Freeman's claims under the Nuremberg Code and various federal regulations on the grounds the provisions did not provide for a private right of action. The district court entered final judgment on March 24, 2023.

**B.**

On April 5, 2023, Mr. Freeman filed a motion to set aside or vacate the judgment under Rule 60(a) and (b), which the court construed as also seeking reconsideration under Rule 59(e). In that motion, Mr. Freeman requested leave to

6

file a fourth amended complaint and sought recusal of the magistrate judge and district court judge under 28 U.S.C. § 455.

On April 21, Mr. Freeman filed a notice of appeal challenging the district court's March 23 order dismissing his complaint and entering final judgment.

On June 28, the district court issued an order denying Mr. Freeman's post-judgment motion in its entirety. Mr. Freeman did not amend his notice of appeal or file a separate notice of appeal as to the June 28 order.

## DISCUSSION

### I.

### A. Standard of Review

The district court concluded it lacked jurisdiction over much of Mr. Freeman's complaint based on sovereign immunity because the federal defendants were not his employer and because many of his claims cite provisions that do not provide a private right of action. We review those conclusions de novo. *See Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004) ("We review the district court's dismissal for lack of subject matter jurisdiction de novo."). Mr. Freeman "bears the burden of establishing [subject matter] jurisdiction as a threshold matter." *Id.* To the extent the defendants attack the factual basis for subject matter jurisdiction, including whether they were Mr. Freeman's employer, "the court does not presume the truthfulness of factual allegations in the complaint." *Id.*

We also review de novo dismissals for failure to state a claim under Rule 12(b)(6). *Brokers' Choice*, 861 F.3d at 1104. To survive a motion to dismiss

7

under Rule 12(b)(6), "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotation marks omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (brackets and internal quotation marks omitted). In reviewing a dismissal under Rule 12(b)(6), "we accept the well-pleaded facts alleged as true and view them in the light most favorable to the plaintiff." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023). But we need not accept "threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements." *Id.* (brackets and internal quotation marks omitted). "An allegation is conclusory where it states an inference without stating the underlying facts or is devoid of any factual enhancement." *Id.* (internal quotation marks omitted).

As a pro se litigant, Mr. Freeman is entitled to a liberal construction of his pleadings. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But he must still comply with the same rules as other litigants, and we do not act as his "attorney in constructing arguments and searching the record." *Id.*

## B. Dismissal of Discrimination Claims Against Raytheon

To survive Raytheon's motion to dismiss, Mr. Freeman needed to allege sufficient facts to allow an inference that Raytheon was his employer or otherwise

responsible for the actions of Collins Aerospace. *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998) (explaining that a prima facie case under Title VII requires an employee/employer relationship); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1361 (10th Cir. 1993) ("Whether Defendant was Plaintiffs' employer depends upon whether Defendant is liable for the acts of its subsidiary."). We agree with the district court's conclusion that the complaint fails in this regard. We expand on its reasoning, however, to address Mr. Freeman's arguments under the single-employer theory.

The district court dismissed the claims against Raytheon because it concluded the complaint failed to allege facts that would justify piercing the corporate veil. *See* R. vol. 3 at 194 (holding the complaint "fail[ed] to show that Defendant Raytheon used Collins Aerospace to perpetuate a fraud or wrong that would permit Plaintiff to pierce the corporate veil"). We agree with the district court's analysis as far as it went. Piercing the corporate veil requires facts from which to infer Collins Aerospace "was used to defeat public convenience, or to justify or protect wrong, fraud or crime." *Boughton v. Cotter Corp.*, 65 F.3d 823, 836 (10th Cir. 1995) (internal quotation marks omitted). The complaint does not allege such facts. Nor does it allege facts relevant to whether Collins Aerospace was Raytheon's alter ego or indeed facts relevant to any theory that would justify piercing the corporate veil. *See Boughton*, 65 F.3d at 836 (listing factors relevant to piercing-the-corporate-veil analysis). The district court was therefore correct in rejecting the veil-piercing theory of liability.

But Mr. Freeman's theory against Raytheon is slightly different. His argument focuses on the single-employer theory of liability, which does not depend on a showing of fraud. The single-employer theory allows a "plaintiff who is the employee of one entity to hold another entity liable by arguing that the two entities effectively constitute a single employer." *Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014) (internal quotation marks and ellipsis omitted).

In general, "[t]he doctrine of limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances." *Frank*, 3 F.3d at 1362. One of those circumstances is where the plaintiff's immediate employer and its parent corporation are integrated to an extent they should be considered a single employer for purposes of federal discrimination law. *See Lockard*, 162 F.3d at 1069-70 (explaining the single-employer test). To succeed under this theory, Mr. Freeman would have to show "sufficient indicia of an interrelationship" between Collins Aerospace and Raytheon to justify his belief that Raytheon was jointly responsible for the acts of his immediate employer. *Id.* at 1070. Put another way, Raytheon must have exercised a degree of control over Collins Aerospace "exceed[ing] that normally exercised by a parent corporation." *Id.* at 1071 n.2. In considering this question, courts look to the following factors: "interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control." *Id.* at 1069.

The complaint does not allege facts to indicate interrelated operations or common management between Raytheon and Collins Aerospace. *See Frank*, 3 F.3d at 1362-63 (providing the following examples of facts suggesting interrelated operations: the parent keeping its subsidiary's books, issuing its paychecks, paying its bills, and sharing its employees, headquarters, and office space). The complaint does include allegations of common ownership, but that, "standing alone, can never be sufficient to establish parent liability." *Lockard*, 162 F.3d at 1071 (internal quotation marks omitted).

Most importantly, the complaint is devoid of facts relevant to the most critical factor—centralized control of labor relations. *See Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1220 (10th Cir. 2002) (observing that courts generally consider control of labor relations "to be the most important" factor); *see also Lockard*, 162 F.3d at 1070 ("The key factor of this four-part test is . . . whether the putative employer has centralized control of labor relations."). Centralized control of labor relations means the "parent must control the *day-to-day employment decisions of* the subsidiary." *Lockard*, 162 F.3d at 1070 (internal quotation marks omitted). Several factors inform whether a parent controls a subsidiary's labor relations, including whether the "parent kept [the] subsidiary's books, issued its paychecks, and paid its bills;" whether the "parent and subsidiary had common employees, shared services, equipment, employees and office space;" and whether the "parent controlled [the] subsidiary's payroll and benefit program." *Id.* (citing *Frank*, 3 F.3d at 1363).

11

The complaint does not allege facts showing that Raytheon exercised day-to-day control over Collins Aerospace. Instead, the allegations focus exclusively on a single policy related to the COVID-19 pandemic. We accept as true that Raytheon promulgated the Covid Policy. But that is not enough to infer it exercised day-to-day control over Collins Aerospace. We have specifically cautioned that "[a] parent's broad general policy statements regarding employment matters are not enough to" show centralized control of labor relations. *Frank*, 3 F.3d at 1363. "The critical question is, what entity made the final decisions regarding employment matters *related to the person claiming discrimination*?" *Id.* (internal quotation marks and brackets omitted) (emphasis added).

In this case, that entity was Collins Aerospace. As Mr. Freeman alleges in his complaint, he was hired by Collins Aerospace. When he determined that the Covid Policy was discriminatory against unvaccinated employees, he took his complaints to the human resources department at Collins Aerospace. And when he refused to comply with the Covid Policy, his employment was terminated by Collins Aerospace. Raytheon may have promulgated the policy and provided the digital platform for employees to record their vaccination status, but there is no allegation from which to infer it had any right to fire Mr. Freeman or any other employee of Collins Aerospace. *See Bristol*, 312 F.3d at 1219 (explaining that "[m]ost important to control over the terms and conditions of an employment relationship is the right to terminate it"). To the contrary, what can be inferred from the complaint is that Raytheon was no longer obligated to enforce any vaccine mandate that may have

12

been added to its defense contracts. Because Mr. Freeman has not alleged facts leading to the plausible inference that Raytheon and Collins Aerospace constituted a single employer, his employment discrimination claims against Raytheon fail.

## C. Dismissal of Claims Against the Federal Government

Mr. Freeman's claims against DOD are brought under the joint-employer theory of liability. He argues DOD and Raytheon were joint employers because Raytheon operated as a defense contractor. The district court dismissed this claim outright, and it was right to do so. Sovereign immunity does not bar employment discrimination claims against the federal government where the federal government is the employer. *See Lindstrom v. United States*, 510 F.3d 1191, 1195 (10th Cir. 2007) (citing Title VII waiver of sovereign immunity set forth at 42 U.S.C. § 2000e-16(d)). But here the federal government did not employ Mr. Freeman, and this would be so even if Raytheon and Collins Aerospace could be considered a single employer, a theory we just rejected.

Under the joint-employer theory, two separate entities may be considered joint employers "if they share or co-determine those matters governing the essential terms and conditions of employment." *Knitter*, 758 F.3d at 1226 (internal quotation marks omitted); *see id.* at 1226-27 (explaining differences between the single-employer and joint-employer tests). DOD might be considered a joint employer under this test if it exercised "significant control over [Mr. Freeman]." *Id.* at 1226. In determining whether an entity exercised significant control, courts consider many factors, including "the ability to promulgate work rules and assignments, and set conditions

of employment, including compensation, benefits and hours; day-to-day supervision of employees, including employee discipline; and control of employee records, including payroll, insurance, taxes and the like." *Id.* (internal quotation marks and ellipsis omitted). Most importantly, however, as with the single-employer test, we ask whether DOD had the right to terminate the employment relationship. *See id.* at 1228 (emphasizing preeminence of the right to terminate). There is nothing in the complaint to indicate DOD had the right to fire Mr. Freeman or anyone else working at Raytheon or Collins Aerospace. Moreover, aside from the allegations about the unenforced contractual provision inserted into some defense contracts, the complaint includes no facts relevant to the significant-control analysis. In short there is nothing from which to draw a reasonable inference that DOD was Mr. Freeman's employer. The employment discrimination claims against the federal government were properly dismissed.

## D.  Dismissal of the Constitutional Claims

Mr. Freeman claims that being forced to abide by the discriminatory Covid Policy under threat of termination violated his rights under the First, Fourth, and Fifth Amendments. These claims fail because Mr. Freeman has not alleged facts from which to infer Collins Aerospace was a government actor. *See Gallaher*, 49 F.3d at 1446-47 (explaining the "essential dichotomy" between governmental action, which is subject to constitutional scrutiny, and "private conduct, which however discriminatory or wrongful," is not). Several principles underlie the constitutional distinction between government action and private conduct, including

14

the desire to avoid holding the government responsible for conduct beyond its control. *See id.* at 1447. That is precisely what Mr. Freeman seeks to do here in claiming the Covid Policy was implemented and enforced at the behest of the federal government. Not so. Even if the government initially required that contracting employees be vaccinated, it did not promulgate the specific policy at issue, and in any event, it had expressly withdrawn its own vaccination mandate by the time Mr. Freeman was fired. Collins Aerospace opted to retain its Covid Policy, but Mr. Freeman cannot hold the government liable for the decision of a private employer to enforce its own employment policies.

As the federal defendants correctly argue, "the fact that a private entity contracts with the government or receives governmental funds or other kinds of governmental assistance does not automatically transform the conduct of that entity into state action." *Gallagher*, 49 F.3d at 1448. Mr. Freeman claims Raytheon, and by extension Collins Aerospace, had a financial incentive to comply with the government's COVID-19 policies. That is not enough to transform those entities into government actors. *See Gilmore v. Salt Lake Cmty. Action Program*, 710 F.2d 632, 636 (10th Cir. 1983) (recognizing that "governmental funding and regulation of an ostensibly private organization, in the absence of other factors, is insufficient to establish governmental action."); *see also Hurst v. McDonough*, No. 21-2068, 2022 WL 1090913, at *4 (10th Cir. Apr. 12, 2022) (holding the Department of Veterans Affairs was not a joint employer of federal contractor employee for purposes of

15

Title VII) (unpublished) (cited for its persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A))

Finally, even if Collins Aerospace could be considered a government actor, that does not automatically convert its termination of Mr. Freeman into government action. *See Gilmore*, 710 F.2d at 638 (recognizing "that not all actions by state actors are state action"). Government action requires, at a minimum, "a showing that the deprivation was in some sense attributable to a governmental decision." *Id.* Here the government affirmatively stated it would not enforce its vaccination mandate against government contractors. And there are no allegations indicating a government agent participated in any way in the decision to fire Mr. Freeman. Because the complaint fails to allege that Collins Aerospace was a government actor and that its termination of Mr. Freeman constituted governmental action, the district court was correct in dismissing the constitutional claims.

### E. Dismissal of Claims Under the Ninth Amendment, the Nuremberg Code, and 16 C.F.R. 1028.116

Mr. Freeman argues the defendants' conduct violated rights stemming from a combination of the Ninth Amendment and the Nuremberg Code and federal regulations governing informed consent. But he has cited no authority supporting this novel theory of liability. To the contrary, courts have held the Ninth Amendment does not create a private right of action. *See, e.g., Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) (holding "the ninth amendment has never been recognized as independently securing any constitutional right"). And Mr. Freeman

16

has not identified any statute creating a private right of action for violations of the Nuremberg Code or 16 C.F.R. § 1028.116, which sets forth regulations governing informed consent in human research. *See generally McKenzie v. U.S. Citizenship & Immigr. Servs.*, 761 F.3d 1149, 1157 (10th Cir. 2014) (explaining the Supreme Court "will rarely recognize an implied private cause of action arising from a mere regulation"). The district court did not err in dismissing these claims.[6]

## F. Challenges to the District Court's June 28, 2023, Order

We lack jurisdiction to address Mr. Freeman's arguments concerning the district court's order denying his post-judgment motion because he did not file a separate, or amend his existing, notice of appeal to challenge that order. *See* Fed. R. App. P. 4(a)(4)(B)(ii); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1159-60 (10th Cir. 2023).

### CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[6] For the same reason, the district court was correct in dismissing Mr. Freeman's Thirteenth Claim for Relief, which cites various federal regulations implementing the Ethics in Government Act. *See* 5 C.F.R. § 2635.101, *et seq*. These regulations do not create a private right of action. *Id.*, § 2635.106(c).